CHARLES E. MALONE, *et al. v.* AUSTIN PEAY, *et al.*

(*Nashville.* December Term, 1928.)

Opinion filed June 15, 1929.

ROBERT L. SADLER, for appellants.

L. D. SMITH, Attorney-General, A. B. BROADBENT and J. B. WRIGHT, for defendants.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This was a suit brought by taxpayers on behalf of the State to enjoin the purchase by State officials of certain lands from the Little River Lumber Company for Park purposes, and in the alternative to recover back the purchase money. A demurrer was overruled on a former hearing (157 Tenn., 429) and the case remanded for answer.

The purchase was made under the authority, as conceived by the State officials, of Chap. 57, Acts 1925, but this Court was of opinion that that Act authorized the

purchase of lands in fee simple only, and that the reservation of timber and other rights by the vendor was inconsistent with such a title.

After the filing of the bill and before the decree of this Court was rendered, Chap. 54, Acts 1927, was passed by the Legislature, which related to this matter and which it was insisted for the State officials was a ratification of the purchase. However, this Court pretermitted consideration of the question of ratification, deeming it essential to determination of that question to have the record show the facts which the Legislature had before it when the Act of 1927 was passed.

Upon the remand answers supported by an agreed stipulation were filed and on the hearing the bill was dismissed by the Chancellor, whose holding was as follows:

"*First*: That prior to the enactment by the 65th General Assembly of the State of Tennessee, and approval by the Governor, of Chapter 54 of the Acts of 1927 of the Public Acts, the Sixty-fifth General Assembly as an organized body, composed of both the House of Representatives and the Senate, had full and complete knowledge of the actual terms upon which the Little River Lumber Company tract, situated in Blount and Sevier Counties in the State of Tennessee, and comprising 76,-507 acres, had been purchased and had full knowledge of all the terms and conditions of the deed by which the Little River Lumber Company conveyed said tract to the State, were fully advised of all the terms and conditions of the Act of Congress of the United States, approved May 22, 1926, and set out in the preamble to said Chapter 54, and had full knowledge of the fact that under the terms of purchase and under the deed of conveyance to the State the Little River Lumber Company

had reserved the right to cut and remove timber upon certain portions of the tract for a period of fifteen years.

That the Sixty-fifth General Assembly as an organized body, including both the House of Representatives and the Senate, prior to said enactment and approval of said Act were fully advised of the fact that the complainants in the present suit had attacked the validity of said purchase and were seeking to have the same declared null and void by the bill filed in this cause.

"*Second*: The Court further finds and decrees that after the knowledge and information possessed by the Sixty-fifth General Assembly, recited above, said Chapter 54 of the Public Acts of 1927 in its preamble recognized the validity of said purchase; by Section 24a recognized and approved the purchase of said tract, subject to the reserved timber rights set forth in the deed, and by Section 21 committed the care and custody of said tract to the Tennessee Great Smoky Mountains Park Commission as the Agent of the State and gave such commission the same power and authority with respect thereto as any other lands to be acquired, under the provisions of said Chapter 54 of the Acts of 1927.

"*Third*: The Court, therefore, orders, adjudges and decrees, that by the enactment of said Chapter 54 of the Acts of 1927, the Sixty-fifth General Assembly of the State of Tennessee did ratify and approve the purchase of said Little River Lumber Company tract upon the terms and conditions set forth in the deed made, executed and delivered by the Little River Lumber Company to the State of Tennessee, which deed was accepted by the State officers and properly registered."

We concur with the learned Chancellor. While the Act of 1927 expressly provides against the use of the proceeds of bonds to be issued under the Act in acquiring

the timber rights, it appears that the Legislature was advised that other provision had been made for this purpose, and it appears further that every pertinent detail and circumstance of the purchase, and particularly the reservations referred to in our former opinion, were before the Legislature and considered by it before the passage of this Act, and it is therefore inescapable that it was the intention to approve and ratify the purchase.

The intention of the Legislature has been made even clearer by the passage of Chap. 1, Acts 1929, entitled, "An Act to ratify the purchase, for and in behalf of the State, of the Little River Lumber Company tract of land," etc. This act makes specific reference to and approves "the terms and conditions set forth in the deed from the Little River Lumber Company to the State of Tennessee, dated December 31, 1926, and of record," etc.

Appellants question the effectiveness of the ratification acts relied on, their theory being that the officials were without power to acquire less than a fee-simple title in the lands, and that ratification cannot cure a want of power. The pertinent question is whether or not the Legislature itself had the power. If it had, and this can hardly be denied, and failed to confer it by the original act, it may, in the exercise of that power, subsequently ratify the action taken by its agents.

The rule is well stated in *Los Angeles City Water Co.* v. *Los Angeles,* 88 Fed., 720 (Aff'd 177 U. S., 558, 44 L. Ed., 886) in this language:

"Whatever a Legislature may originally authorize, it can, if the constitution under which it exists interposes no obstacle, subsequently ratify; and such ratification is equivalent to an original grant of power, operative by relation, as of the date of the thing ratified."

Leading text books are to the same effect: 43 C. J., p. 292.

This Court, in *State* v. *Ward & Briggs*, 56 Tenn. (9 Heisk.), 100, indicated the essentials of valid ratification by the Legislature, and the steps herein taken bring this case within the rules therein laid down.

Certainly the Legislature had power in the first place to authorize the purchase on the identical terms adopted by its officials. Clearly by these subsequent acts it has ratified and adopted the purchase as made.

The objection that the curative acts are void because of insufficient titles is not well taken. Chap. 57, Acts 1925, sets out in its caption the exact title of the acts it purports to amend and also states the objects of the amendatory act. Chap. 1, Acts 1929, does not purport to amend, revive or repeal a former law.

Nor do we agree with counsel that the legislation under consideration is violative of Sec. 31, Art. II, of our constitution in that it is a giving of the State's credit to a corporation. The theory is that the lands being acquired for park purposes are to be transferred to the United States. In the first place, the United States is not a corporation within the meaning of this section of our constitution. In *Ransom* v. *Rutherford County*, 123 Tenn., 1, this Court held that the State is not a "person, company, association or corporation" in the sense of this constitutional inhibition, and quoted with approval from *Lancy* v. *King County*, 15 Wash., 9, wherein it was said that neither the State nor the United States is an "individual, association, company, or corporation within the meaning" of a similar section of the constitution of that State. And see, *Walker* v. *Cincinnati*, 21 Ohio St., 14, 18 Am. Dec., 24, 38, and *State* v. *Milwaukee* (Wis.), 146 N. W., 775. *Rockaway* v. *Statesbury*, 255 Fed., 352.

■ Moreover, a transfer of the title to lands from the State to the United States for park purposes is not a divestiture of the right of use. The beneficial rights of the people of Tennessee are in no sense impaired. Under our dual form of government the citizens of Tennessee are citizens of the United States. The passing of this property from one government to the other involves no loss to the citizen or taxpayer. The object of the constitutional inhibition invoked was to prevent a loss to the State by reason of the loaning or giving of its credit. Here, not only can no loss result, but the State, considered as a political entity, is relieved of a continuing expense of upkeep, while the rights and privileges of this great park system will be preserved to the people of Tennessee.

We find no error and the decree is affirmed.