STATE OF TENNESSEE *ex rel. v.* JOHN W. OLIVER, *et ux., et al.*

(*Knoxville,* September Term, 1930.)

Opinion filed February 7, 1931.

104

L. D. SMITH, Attorney-General, J. W. COOPER, Assistant Attorney-General, J. PIKE POWERS, JOHN R. AUST and M. H. GAMBLE, for plaintiff in error.

KRAMER & KRAMER, C. C. JACKSON, *guardian ad litem*, FRANTZ, McCONNELL & SEYMOUR, GREEN, WEBB & BASS, A. M. PAINE and JOSEPH F. DENNY, *amici curiae*, for defendant in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

Chapter 55 of the Acts of 1925, chapter 57 of the Acts of 1925, and chapter 54 of the Acts of 1927 authorized the acquisition by the State of a body of mountain land to be turned over to the United States for inclusion in a public park to be known as the Great Smoky Mountains National Park, established by Act of Congress, approved

May 22, 1926. The details of the plan are set out in the Acts of the Legislature and the Act of Congress just mentioned and have been discussed in former opinions of this court. *Malone* v. *Peay,* 157 Tenn., 429; 159 Tenn., 321.

Chapter 54 of the Acts of 1927 provided for condemnation of land within the area designated as aforesaid for park purposes, and this suit was brought to expropriate certain land, negotiations for the purchase of the same having failed.

Numerous defenses were interposed by the landowner. All were overruled save one. The court below sustained the contention that the State could not exercise the power of eminent domain when the purpose was to turn over the land obtained to the United States and the State's petition was accordingly dismissed. Each party appealed from the rulings of the circuit judge so far as adverse.

■ The trial judge apparently dismissed the suit upon propositions laid down by Judge Cooley in *People ex rel.* v. *Humphreys,* 23 Mich., 471, 9 American Reports, 94, that the sovereign can only exercise the power of eminent domain for its own public uses and not for the public uses of another sovereignty; that beyond the public uses of the sovereignty exercising the power, there exists no necessity, which is the foundation of the right. This is approved in *Kohl* v. *United States,* 91 U. S., 367, 23 L. Ed., 449; *Darlington* v. *United States,* 82 Pa., 382; *Grover Irrigation, etc., Co.* v. *Lovella Ditch, etc., Co.,* 21 Wyo., 204, Anno. Cas.. 1915D, 1207, and other cases collected in Note, Anno. Cas. 1915D, 1226. That the rule stated is sound may be, and is, conceded, although we do not concede that it has been properly applied in all the cases

cited. Nor do we agree that the rule can be invoked here to defeat the suit of the State. Principles announced in former decisions of this court compel a contrary conclusion.

The power to tax, no less than the power of eminent domain, is a sovereign power and, under the Constitution of Tennessee, can only be employed for the public use and necessity of that instrumentality of government which undertakes to exercise such power.

Under section 29 of Article II of the Constitution, the several counties and incorporated towns of the State may be authorized to impose taxes only "for county and corporation purposes respectively." Upon elaborate consideration, however, this court justified donations, authorized by statute, on the part of Rutherford County and the City of Murfreesboro to a State Normal School located in said city and county. This, although, the title, management and control of that institution was vested in the State. *Ransom* v. *Rutherford County*, 123 Tenn., 1. It was argued that no special benefits were given to the citizens of Murfreesboro and Rutherford County by reason of the location of the normal school at Murfreesboro which were not shared by all other citizens of the State; that every citizen of the State might partake of the advantages of the institution, yet the taxpayers of Murfreesboro and Rutherford County alone were onerated with the bonds issued to raise the contribution. The court said:

"While it is true that the State Normal School to be established under the provisions of this Act is a State institution, it combines features providing for educational advantages which are peculiarly accessible to the scholastic population of Rutherford County and the City

of Murfreesboro, thus combining with the State purpose also a municipal and county purpose. We can perceive no constitutional obstacle in the way of State, county and city combining for the establishment and maintenance of such an institution.''

In *Hill* v. *Roberts,* 142 Tenn., 215, the court held valid statutes authorizing the County of Davidson and the City of Nashville to issue bonds to contribute to the establishment of the Memorial Square in that city, on the ground that it was a joint State, county and city enterprise, in the benefits of which the city and county shared.

In *East Tennessee University* v. *Knoxville,* 65 Tenn. (6 Baxt.), 175, it was held that the City of Knoxville had power under the constitution to appropriate money for the benefit of the East Tennessee University. It was said:

''The controlling question is, was the appropriation made to secure to the inhabitants of the city the benefits and advantages of education? Nor is the principle affected by the fact that pupils from every other county or State or country have the same privilege of going to the school with the pupils whose parents are members of the corporation of Knoxville. The appropriation is made, not to secure the inhabitants of Knoxville either superior rights or privileges over the inhabitants of other portions of the country, but to secure the advantages resulting from their proximity to the school. The object is to secure the permanent location of the school at the point so near to Knoxville that the facilities for and the benefits of a thorough education can be enjoyed by the children of its inhabitants without the expense and inconvenience to which those are subjected who are situated at a distance from the school. It does not secure superior

rights in the school, but superior advantages in enjoying common rights.''

It is not to be doubted, under the reasoning of *Ransom* v. *Rutherford County, supra,* and *Hill* v. *Roberts, supra.* that the County of Rutherford and the City of Murfreesboro in the one case and the County of Davidson and the City of Nashville in the other, given statutory authority, might have exercised the power of eminent domain to procure the land necessary for the enterprises undertaken by those counties and cities jointly with the State.

We can perceive no reason why a public use, or a public necessity, may not be common to Tennessee and to the United States, just as such a use or necessity may be common to the State and the county or to the State and the city.

In *Memphis* v. *Hastings,* 113 Tenn., 142, and *Railroad* v. *Memphis,* 126 Tenn., 267, the power of the State, or of a municipal arm or agency of the State, to condemn land for park purposes is fully sustained.

We do not think it indispensable that such a public necessity, justifying the exercise of the power of eminent domain, be exclusively the necessity of the particular sovereignty seeking to condemn.

Notwithstanding the area acquired for park purposes by Tennessee is to be conveyed to the United States and controlled by the latter government, the State of Tennessee will be the chief beneficiary of the undertaking. The park will be nearer to the centers of population in this State than to those of any other State. The park will consequently be more available to the people of Tennessee than to the people of any other State, with the possible exception of the people of North Carolina. Our people will enjoy every advantage from this park

operated by the Federal government that they would enjoy if it were operated by our own State. As said in *East Tennessee University* v. *Knoxville, supra,* while the citizens of Tennessee will not have superior rights in the park, they will have superior advantages in enjoying common rights.

In *Lancey* v. *King County,* 15 Wash., 9, the court sustained the power of a county of that State to condemn land to be later conveyed to the United States to be used and controlled by the latter in the construction of a ship canal connecting certain lakes with Puget Sound. This conclusion was reached largely on the ground that while the improvement was for the use and benefit of the general public, it was in a much greater degree for the use and benefit of the citizens of that particular locality.

In *Rockaway* v. *Stotesbury,* 225 Fed., 352, the power of the State of New York to condemn land, for purposes of public defense, and turn the land over to the government was sustained, since the public defense generally included the defense of the State of New York.

So in *State* v. *Milwaukee,* 156 Wis., 549, the right of condemnation by a local governmental agency was sustained for harbor improvement where the land taken was to be conveyed to the Federal government. And in *Yarbrough* v. *North Carolina Park Commission,* 196 N. C., 284, the court has sanctioned authority given to the park commission of that State to condemn land for the Great Smoky Mountains National Park, although said land is to be conveyed in fee to the United States. The result reached in these two cases, however, appears to be rested upon somewhat different reasoning.

Other cases fully sustain the view that where the use for which condemnation is sought is a public use in one

State, the fact that it may serve the public use of another State does not bar the right to exercise the power of eminent domain. *Columbus Water Works* v. *Long*, 121 Ala., 245; *Morris Canal, etc., Co.* v. *Townsen*, 24 Barb. (N. Y.), 664; *Washington Water Power Co.* v. *Waters*, 19 Idaho, 595.

It is not a new thing in this jurisdiction for the power of eminent domain to be exercised for the joint use and benefit of the people of this State and the people of another State. Indeed, the very right to exercise this power for such common benefit is frequently conferred upon the instrumentality of another sovereignty. For instance, sections 1874, 1875 and section 1508a, Thompson's-Shannon's Code, authorize railroad corporations chartered under the laws of other States to condemn lands in this State. Sections 1830 and 1832 authorize telephone companies organized under the laws of other States to condemn land in this State. The circumstance that the interstate railroads and telephone lines are of benefit to the citizens of another State does not render them less a benefit to this State and does not detract from their character as a public use.

The validity of such statutes as the foregoing, so delegating the right of eminent domain, has not been questioned in this jurisdiction, but elsewhere they are uniformly sustained. See cases collected in Note, Anno. Cas. 1915C, 928.

The power to select the land to be taken is conferred by these statutes on the creatures of another sovereignty and such delegation of this power is likewise generally approved. We think the power to select may, with more propriety, be conferred upon the United States government. While the State could not coerce the government,

as it could the foreign corporations, and enforce the proper use of land taken, such proper use is well secured upon the faith of the government, pledged by the Act of Congress, that the land shall be used for park purposes.

If the State may delegate the power to exercise the right of eminent domain for a particular purpose, the State may directly exercise such power for a like purpose.

There has been much argument in this case as to whether the United States government possesses the power to condemn land to establish such a park as Great Smoky Mountains National Park. We think this controversy is beside the case. The government is making no such effort here. Under the Act of Congress, U. S. C. Title 16, section 403, et seq., the government only undertakes to accept lands for this purpose to be conveyed or ceded by the State of North Carolina and the State of Tennessee.

We think the power of the government to accept land for such a use has been too long and too widely recognized to be now questioned. Many of the national parks are comprised of land reserved by the government from the public domain but many others are comprised of land ceded or conveyed to the government, and the latter method of establishing a national park has received the approval of the Supreme Court of the United States.

Yosemite National Park, originally a part of the public domain, was ceded or conveyed to the State of California for park purposes. *Hutchings* v. *Low,* 82 U. S., 77, 21 L. Ed., 82. After a lapse of years, these lands were conveyed and ceded back to the United States for a national park and accepted by Congress. Joint Resolution June

11, 1906, 34 Stat. at L., 831. In *Curtin* v. *Benson,* 222 U. S., 78, 56 L. Ed., 102, the Supreme Court observed that "the park was regularly and legally established."

Abraham Lincoln National Park is composed of land conveyed or ceded to the government. U. S. C. Title 16, section 211, et seq.; so is Mammoth Cave National Park, U. S. C. Title 16, section 404; and so is Shenandoah National Park, U. S. C. Title 16, section 403. A perusal of the various Acts of Congress setting up and regulating national parks shows that in nearly every instance authority is given to the United States government to accept conveyances of other lands for inclusion in such parks.

In *Lancey* v. *King County,* 15 Wash., 9, 34 L. R. A., 817, it was said in the opinion that either the United States or the county could acquire the land for the purpose taken and "if either could do it, it would require some good reason for holding that they could not proceed jointly." *In re United States,* 96 N. Y., 227, contains similar language. These expressions doubtless prompted the discussion by defendant's counsel of the authority of the Federal government to exercise the power of eminent domain for the purposes herein considered. Such argument, however, does not advance the defendant's case. If the Federal government lacks authority in the premises it does not follow that the State government lacks such authority. If either can both can, may be sound. If either cannot both cannot, or the other cannot, is obviously unsound.

We pass now to the assignments of error made on behalf of the defendant.

■ It is said that chapter 54 of the Acts of 1927 providing for the acquisition of land for Great Smoky Mountains National Park and chapter 99 of the Acts of 1929

relating to the same subject—that these Acts being amendatory of chapter 55 of the Acts of 1925 and chapter 57 of the Acts of 1925 introduce a separate and distinct subject into this legislation and that the Acts of 1927 and 1929 accordingly transgress section 17 of Article II of the Constitution to the effect that no Act shall contain more than one subject. It is true that an amendatory statute incorporates itself into the original statute and the two become one law. The scope of the original statute, however, may be enlarged by amendment, if incongruous matter is not brought in.

 The case of *Railroad* v. *Byrne,* 119 Tenn., 278, from which defendant takes the principles relied on by him, directly sustains the statutes before us. In that case the court considered the validity of chapter 82 of the Acts of 1907, amending chapter 76 of the Acts of 1895, and converting the Court of Chancery Appeals into the Court of Civil Appeals. It was contended that the first Act created a court with appellate jurisdiction of equity causes and that the second Act added appellate jurisdiction of law causes, thereby making the Act as amended deal with two distinct subjects. This contention was overruled. The court said the real subject or object of the earlier Act was the creation of an intermediate appellate court and that the enlargement of the jurisdiction of that court did not bring in incongruous matter.

So, in the case before us, the real subject and purpose of the Acts of 1925 was to provide a park system in Tennessee and there is nothing incongruous in amendatory legislation providing that one of these parks in Tennessee shall be operated through the agency of the Federal government.

Section 17 of Article II of the Constitution, insofar as it forbids the inclusion of more than one subject into legislation, has been more recently discussed in *Bell* v. *Hart,* 143 Tenn., 581. Upon authority of that case and those therein reviewed, this assignment of error must be overruled. While the captions of the Acts of 1925 are doubtless not broad enough to cover the Act of 1927 and the Act of 1929, the captions of the original Acts were amended by the subsequent laws, which is permissible practice under *Railroad* v. *Byrne* and cases therein cited.

It is next urged that chapter 54 of the Acts of 1927, by providing for the cession of the park area to the United States of America, changes the boundary line between the States of Tennessee and North Carolina in violation of section 31 of Article I of the Constitution of this State.

Section 31 of Article I of our Constitution undertakes to define the boundaries of Tennessee. A like section was contained in the Constitution of 1796 and in the Constitution of 1834. Just what effect is to be given to this section and to what extent it restrains the legislature in changing the boundaries of the State, it is not necessary here to determine. It may be remarked, however, that in two notable instances the legislature has authorized the cession to other States of Territory supposed to be within the boundaries of Tennessee as those boundaries are defined in the present Constitution and were defined in the Constitution of 1796. In one instance territory was surrendered to Kentucky, in the other instance, to Virginia. Both cessions received the approval of this court and the Supreme Court of the United States. *Parker* v. *Claiborne,* 32 Tenn. (2 Swan), 566; *Campbell* v. *Crockett,* 10 Tenn. (8 Yerg.), 225; *Poole* v. *Fleeger,*

11 Pet., 185, 9 L. Ed., 680; *Virginia* v. *Tennessee,* 148 U. S., 503, 37 L. Ed., 537.

We do not think, however, that the park legislation can be said to have changed the boundary of Tennessee. Referring to similar legislation of that State respecting that portion of this park in North Carolina, the Supreme Court of North Carolina says there is no change of sovereignty. *Yarbrough* v. *North Carolina Park Commission,* 196 N. C., 285.

Chapter 99 of the Acts of 1929 heretofore referred to contains the following:

"That the United States of America is authorized to acquire by conveyance, and said Commission is authorized to convey to the United States, pursuant to this Act all lands hereinabove mentioned and for the purposes set out in the Act of Congress above mentioned, and exclusive jurisdiction shall be, and the same is hereby ceded to the United States of America over and within all the territory in the State of Tennessee thus deeded or conveyed; saving, however, to the State of Tennessee the right to serve criminal or civil process within the limit of the land or lands thus acquired in suits or prosecutions for or on account of rights acquired, obligations incurred or crimes committed, in said State outside of said land or lands, and on account of rights acquired, obligations incurred, or crimes committed on or within said lands, prior to the date of the giving or service of notice, as hereinafter provided, of the assumption of police jurisdiction over such land or lands by the United States; and, saving further, to the said State the right to tax oil for use in motor vehicles, and to tax persons and corporations, their franchises and properties, on land or lands deeded or conveyed as aforesaid, and saving, also

to persons residing in or on any of the land or lands deeded or conveyed as aforesaid the right to vote at all elections within the county in which said land or lands are located, upon like terms and conditions and to the same extent as they would be entitled to vote in such county had not such lands been deeded or conveyed, as aforesaid, to the United States of America; *provided,* nevertheless, that such jurisdiction shall not vest in the United States of America unless and until it, through the proper officer or officers, notifies the Governor and through him the State of Tennessee, that the United States of America assumes police jurisdiction over the land or lands thus deeded.''

 Certainly there has not been an entire surrender of sovereignty of the State of Tennessee over the territory to be embraced in the Great Smoky Mountains National Park. The reservation on the part of the State of the right to serve criminal or civil process within this limit under the circumstances set out in the Act of 1929 is valid under *Fort Leavenworth R. Co.* v. *Lowe,* 114 U. S., 525, and under *Chicago, etc., R. Co.* v. *McGlinn,* 114 U. S., 542, 29 L. Ed., 270. Under the same authorities, if the Federal government should cease to use for park purposes the lands herein ceded, sovereignty over those lands would revert to the State of Tennessee.

To what extent there has been a transfer of sovereignty by the State of Tennessee to the United States over the park area within this State is a question to be decided when it becomes necessary.

Article I, section 8, subsection 17 of the Federal Constitution provides:

''That Congress shall have power . . . . to exercise exclusive legislation, in all cases whatsoever over such

district (not exceeding ten miles square) as may, by cession of particular States, and the acceptance of Congress, become the seat of the government of the United States, and to exercise like authority over all places purchased by the consent of the legislature of the State in which the same shall be, for the erection of forts, magazines, arsenals, dock yards, and other needful buildings.''

Decisions of the Supreme Court of the United States and the lower Federal courts indicate that unless land purchased within the limits of a State by the United States is purchased by the consent of the legislature of that State and purchased and used for the erection of forts, magazines, arsenals, dock yards, or other needful buildings, the United States does not necessarily have authority to exercise exclusive legislation in such territory; that where land is acquired by the government for a use or purpose not enumerated in the section of the Constitution quoted, the State may reserve such jurisdiction and powers as it sees fit, not inconsistent with the effective use of the land for the purposes intended. *Chicago, etc., R. Co.* v. *McGlinn, supra; Fort Leavenworth R. Co.* v. *Lowe, supra; In re Kelly,* 71 Fed., 545; *United States* v. *Hopkins,* 26 Fed. Cas., No. 15387a, and cases collected in Note, 3 Anno. Cas., 831. *

In *State ex rel.* v. *Willett,* 117 Tenn., 334, this court expressed the opinion that the soldiers' home property near Johnson City was within the intent and meaning of Article I, section 8, subsection 17 of the Federal Constitution, and having been purchased by consent of the legislature of Tennessee, said property was under exclusive Federal jurisdiction.

In *Gill* v. *State,* 141 Tenn., 379, the court maintained the jurisdiction of Tennessee to punish offenses

committed on the land near Nashville purchased by the United States government for the operation of a powder plant during the last war. Among other things, the court said that unless Congress took jurisdiction of territory within a State ceded or purchased, by exercising its exclusive right of legislation over the place, the jurisdiction of the State to support and maintain its laws within such limits might be asserted and maintained.

The Acts of Congress provide that the administration, protection and development of the Great Smoky Mountains National Park shall be exercised under the direction of the Secretary of the Interior by the National Park Service, subject to the provisions of the Act of August 25, 1916. U. S. C. Title 16, section 403b. The Act of August 25, 1916, provides that the Secretary of the Interior shall make and publish such rules and regulations as he may deem necessary or proper for the use and management of the parks and that violations of any such rules and regulations shall be punished by fine, etc. U. S. C. Title 16, section 3.

Acts of Congress providing for the punishment of offenses within the territorial jurisdiction of the United States refer to offenses "committed within or on any lands reserved or acquired for the exclusive use of the United States and under the exclusive jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dock yard, or other needful building." U. S. C. Title 18, section 451.

From the foregoing it is obvious that the State of Tennessee has not entirely parted with its sovereignty over the park area; that there are limitations upon the

jurisdiction that the Federal government can assert over such area; and that, at any rate, the Federal government has not asserted exclusive jurisdiction over such territory.

It is further objected by the defendant that the cession by the legislature of this park land to the Federal government violates section 4 of Article X of the Constitution of Tennessee providing that "new counties may be established by the legislature to consist of not less than two hundred and seventy-five square miles, and which shall contain a population of seven hundred qualified voters" and that "no line of such county shall approach the courthouse of any old county from which it may be taken nearer than eleven miles, nor shall such old county be reduced to less than five hundred square miles."

It is said that the alleged removal of the park lands from Blount County and from Sevier County will reduce both these counties below their constitutional size.

Very plainly section 4 of Article X of the Constitution is a limitation upon the right of the legislature to form new counties and has no relation to such a project as undertaken by the legislature in the Acts before us.

It is contended that the authorization by the legislature of Great Smoky Mountains National Park transgresses sections 28 and 29 of Article II of the Constitution providing for equal taxation; that the park lands in Blount County are removed from taxation while other lands in such county remain subject to taxation.

This condition results from the supremacy of the Federal authority and because government property is not subject to taxation by the State. The uniformity clause cannot reach the government.

■ It is furthermore insisted by defendant that the legislation before us violates section 8 of Article I of the Constitution in that it authorizes the condemnation of the property of certain landowners, while providing that certain other land shall not be condemned.

A similar argument was rejected in the fully considered case of *Railroad* v. *Memphis,* 126 Tenn., 267, wherein it was held that particular property belonging to a particular citizen could be selected directly for the public use by legislative enactment; and that selecting the property to be taken, as contradistinguished from similar property in the same locality, was a political right of the sovereign, not subject to review by the courts.

■ We think it no objection to this legislation that, having determined what property was necessary and subject to condemnation for park purposes, the acquisition by purchase of other property, doubtless not absolutely necessary, was authorized.

Other assignments of error interposed by the defendant are covered by what we have said herein and by *Malone* v. *Peay,* 159 Tenn., 321.

It results that all the defendant's assignments of error are overruled, the State's assignment of error is sustained, and the judgment below reversed and the case remanded for further proceedings.