## KING v. SHEPPARD.
### No. 9260.

Court of Civil Appeals of Texas. Austin.

Dec. 3, 1941.

Rehearing Denied Dec. 31, 1941.

T. R. Odell, of Haskell, and Leonard King, of Austin, for appellant.

Gerald C. Mann, Atty. Gen., Glenn R. Lewis and Frederik B. Isely, Asst. Attys. Gen., and J. Edward Johnson, Atty. for State Parks Board, of Brownwood, for appellee George H. Sheppard.

BLAIR, Justice.

Appellant, A. H. King, a taxpayer, sued appellee, George H. Sheppard, State Comptroller, to enjoin him from paying out the $1,500,000 appropriated by Senate Bill No. 423, Acts 1941, 47th Legislature, c. 571, p. 1114, to pay for land in Brewster County, Texas, to be used for the purposes of the Big Bend National Park.

The act appropriating the $1,500,000 is Subd. 91, p. 1212, of the General Appropriation Bill of 1941, 47th Legislature, and is attacked as being in contravention of Secs. 48 to 52 of Art. 3; Secs. 35 and 36 of Art. 3; Sec. 4 of Art. 14 of the Texas Constitution, and of Sec. 2 of Art. 1, Bill of Rights, of the Texas Constitution, Vernon's Ann.St.

The material portions of Sec. 48 of Art. 3 read:

"The Legislature shall not have the right to levy taxes or impose burdens upon the people, except to raise revenue sufficient for the economical administration of the government, in which may be included the following purposes:

\* \* \*

"and the public grounds of the State."

Appellant contends that this section of the Constitution in particular inhibits the appropriation of public funds for the purpose of purchasing land for parks. We do not so construe it, nor do we find any constitutional inhibition against the Legislature establishing public parks; and in consequence it has the power to levy taxes and make appropriations for their establishment and maintenance. It has been quite generally held that the State has the right and power to acquire and use property, in absence of constitutional restrictions, and may make such use of property as it may see fit, which includes the right to provide for the acquisition and management of public buildings and grounds. To this end it has been held that the State had the power to acquire title to the Alamo property and to place it in the custody of an organization known as the Daughters of the Republic of Texas; and to subsequently make appropriation for the improvement of the property under the direction of the Superintendent of Public Buildings and Grounds, upon approval of the Governor. Conley v. Daughters of Republic, 106 Tex. 80, 156 S. W. 197, 157 S.W. 937; 38 Tex.Jur., 836, § 19; 34 Tex.Jur., 3, § 3; 31 Tex.Jur., 1330, § 3.

In almost every jurisdiction, both state and federal, the courts of this country have held that the Legislature or the Congress may make appropriations to pur-

chase land and maintain public parks without any specific designation of such power in their respective constitutions. These decisions, although recognizing that in the memory of men now living the proposition of taking land for a compensation for public parks may have been regarded as a novel exercise of legislative power, and although many things which in the immediate past were regarded as luxuries, or altogether unknown, may have become necessities, hold that the establishment of public parks affect the health, comfort, pleasure, taste, education, and the mental and physical health of the people, and are thus conducive to the public welfare of the people. Attorney General v. Williams, 174 Mass. 476, 55 N.E. 77, 47 L.R.A. 314; State v. Levitan, 200 Wis. 271, 228 N.W. 140; and Shoemaker v. United States, 147 U.S. 282, 13 S.Ct. 361, 390, 37 L.Ed. 170, wherein the Supreme Court of the United States held: "The adjudicated cases likewise establish the proposition that, while the courts have power to determine whether the use for which private property is authorized by the legislature to be taken is in fact a public use, yet, if this question is decided in the affirmative, the judical function is exhausted; that the extent to which such property shall be taken for such use rests wholly in the legislative discretion, subject only to the restraint that just compensation must be made."

Like views were expressly stated by our Supreme Court in Conley v. Daughters of Republic, supra.

Moreover, we construe the language of Sec. 48 of Art. 3 to the effect that the Legislature may levy taxes for the purposes of "the public grounds of the State" as specific authority to establish and maintain public parks. Beginning in 1907 and from time to time, the Legislature has established various state parks for the benefit of the public. Arts. 6071–6077c, R.S.1925, Vernon's Texas Civil Statutes 1936. In 1915 the Legislature authorized counties to levy taxes for purchase and improvement of public parks under the conditions prescribed, and subsequently authorized the condemnation of land for that purpose. Arts. 6078–6079, R.S.1925, Vernon's Texas Civil Statutes 1936. In 1917 the Legislature likewise authorized cities to establish and maintain public parks. Arts. 6080–6081e, R.S.1925, Vernon's Texas Civil Statutes 1936. In 1923

the Legislature created the State Parks Board, Vernon's Texas Civil Statutes 1936, art. 6067 et seq., "to initiate a movement looking to the establishment eventually of a system of State Parks for the benefit of the people." Article 6069. And by Senate Bill No. 123, Chap. 4, Acts 46th Legislature, p. 520, Vernon's Ann.Civ.St. art. 6077e, by new and additional statutes the Legislature created and established the Big Bend National Park, and specifically authorized the purchase of certain lands and minerals; and the appropriation here involved was made to pay for them.

The term "public grounds" as used in the Texas Penal Code, 1925, Art. 862, has been held to include all parks maintained at the expense of the public. 34 Tex.Jur., p. 2. The terms, "public grounds" and "public parks," have been used interchangeably; and as used in modern and present times in America the term "park" usually signifies an open or inclosed tract of land set apart for the recreation and enjoyment of the public; or, "in the general acceptance of the term, a public park is said to be a tract of land, great or small, dedicated and maintained for the purposes of pleasure, exercise, amusement, or ornament; a place to which the public at large may resort to for recreation, air, and light." Wiggins v. City of Fort Worth, Tex.Civ.App., 299 S.W. 468, 470, affirmed Tex.Com.App., 5 S.W.2d 761.

■ Nor is the appropriation of $1,500,000 out of the General Revenue Fund in contravention of Sec. 49 of Art. 3 of the Constitution inhibiting the creation of a debt, except for certain purposes, and except to supply deficiencies not in excess of $200,000. It is stipulated that there is a deficit of approximately $27,000,-000 in the General Revenue Fund. No showing is made that the appropriation exceeds the anticipated revenues for the year; and the authorities hold that no debt is created unless the appropriation is made or obligation is created in excess of the reasonably anticipated revenues for the year. Ferguson v. Johnson, Tex.Civ.App., 57 S.W.2d 372; McNeill v. City of Waco, 89 Tex. 83, 33 S.W. 322; City of Fort Worth v. Bobbitt, 121 Tex. 14, 36 S.W. 2d 470, 41 S.W.2d 228; City of Terrell v. Dessaint, 71 Tex. 770, 9 S.W. 593; City of Corpus Christi v. Woessner, 58 Tex. 462, 465; Clay Bldg. Co. v. Wink, Tex. Civ.App., 141 S.W.2d 1040; Bexar County v. Hatley, 136 Tex. 354, 150 S.W.2d

980; Cottle County v. McClintock & Roberston, Tex.Civ.App., 150 S.W.2d 134. Furthermore, if it should be assumed that the appropriations for the year are in excess of the anticipated revenues for the year, the bill does not provide which of the items should be excluded. Obviously, the existence of the deficit alone cannot render the Legislature powerless to make appropriations for the operation of the government. Nor does the fact that the Legislature has permitted a large deficit to accumulate in this particular fund prohibit it from making appropriations for the current year operation of the government.

Nor is the act appropriating the $1,500,000 in contravention of Secs. 50, 51 and 52 of Art. 3, which generally inhibit the lending or giving of the credit of the State, or the granting of public moneys, or the authorizing of any county, city or political subdivision of the State to lend its credit or grant public moneys to any individual, association, corporation, etc. The appropriation here involved was made for the purpose of acquiring land to be used for the public generally, and under our above holding the State may acquire public parks and grounds, place the title thereto in the State Parks Board, the Board of Control, or any other agency which the Legislature may direct. These state agencies represent the State itself, which does not come within the inhibitions of the constitutional provisions as to lending credit, etc. Conley v. Daughters of Republic, supra; 34 Tex.Jur., 3, § 4; 31 Tex. Jur., 1332, § 4. In this connection, however, it is appellant's further contention that the act is void because it authorizes the State Parks Board to purchase the land and to then deed it to the Federal Government for national park purposes only, the Federal Government having been by act of Congress authorized to accept same and to operate and maintain same as a national park. The appropriation act does not authorize these things. Another Texas act relinquished no other control over the lands or the inhabitants of the area, except to exempt the lands from taxation.

This same question, however, arose in the State of Tennessee, which has similar constitutional inhibitions against lending the State's credit, and which has passed appropriate legislation to secure land to be used as the Great Smoky National Park under similar arrangement with the Federal Government; and under a similar suit to this one, the court held in the case of Malone v. Peay, 159 Tenn. 321, 17 S.W.2d 901, 903, as follows:

"Nor do we agree with counsel that the legislation under consideration is violative of section 31, art. 2, of our Constitution, in that it is a giving of the state's credit to a corporation. The theory is that the lands being acquired for park purposes are to be transferred to the United States. In the first place, the United States is not a corporation within the meaning of this section of our Constitution. In Ransom v. Rutherford County, 123 Tenn. 1, 130 S.W. 1057, Ann.Cas.1912B, 1356, this court held that the state is not a 'person, company, association, or corporation,' in the sense of this constitutional inhibition, and quoted with approval from Lancey v. King County, 15 Wash. 9, 45 P. 645, 34 L.R.A. 817, wherein it was said that neither the state nor the United States is an 'individual, association, company or corporation; within the meaning' of a similar section of the constitution of that state. And see Walker v. [City of] Cincinnati, 21 Ohio St. 14, 8 Am.Rep. 24, 38, and State v. [City of] Milwaukee, 156 Wis. 549, 146 N.W. 775; Rockaway [Pacific Corp.] v. Stotesbury (D.C.) 255 F. [345], 352.

"Moreover, a transfer of the title to lands from the state to the United States for park purposes is not a divestiture of the right of use. The beneficial rights of the people of Tennessee are in no sense impaired. Under our dual form of government, the citizens of Tennessee are citizens of the United States. The passing of this property from one government to the other involves no loss to the citizen or taxpayer. The object of the constitutional inhibition invoked was to prevent a loss to the state by reason of the loaning or giving of its credit. Here not only can no loss result, but the state, considered as a political entity, is relieved of a continuing expense of upkeep, while the rights and privileges of this great park system will be preserved to the people of Tennessee."

We think this decision is sound and should be followed as the law of this case.

It is also contended that since the appropriation is to purchase land in Brewster County, the act is a local law, and was enacted without giving notice thereof as required by Sec. 57 of Art. 3 of the Texas Constitution. All public properties, such as parks, lakes, dams, and universities are necessarily located in one

place, but are open to the use of all citizens alike, and the park in question is available to not only the people of Brewster County and Texas, but as well to all the people of the United States. This question is settled by the case of State v. Oliver, 162 Tenn. 100, 35 S.W.2d 396. See also the well considered case of Yarborough v. North Carolina Park Commission, 196 N.C. 284, 145 S.E. 563, wherein the exact situation as to the State's purchasing the land to be turned over to the Federal Government to operate Great Smoky National Park is involved.

■ Appellant contends that because of defective caption the act appropriating the $1,500,000 is in contravention of Sec. 35 of Art. 3 of the Constitution, which provides: "No bill, (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed."

This section specifically provides that more than one subject may be expressed in the title of general appropriation bills. Subd. 91, which appropriates the $1,500,-000, is a part of the general appropriation bill, Chap. 571, Acts 1941, 47th Legislature, p. 1114, which is titled, "Appropriation— Executive And Administrative Departments Of State Government," and the $1,-500,000 appropriation is made at page 1212, under the subject or subtitle, "Big Bend State Park." The caption to the general appropriation recites that it is an act making appropriation "for the support and maintenance of the executive and administrative departments and agencies of the State Government." The Texas State Parks Board, under whose control the Big Bend National Park has been placed by the Legislature, is such a department or agency of the government; and this language of the caption is clearly sufficient to authorize the appropriation in question. Sheppard v. Giebel, Tex.Civ.App., 110 S. W.2d 166. Especially is this true in view of the rule that this Sec. 35 is to be construed "liberally, rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purpose for which it was adopted." Altgelt v. Gutzeit, Tex.Civ.

App., 187 S.W. 220, 224; Consolidated Underwriters v. Kirby Lbr. Co., Tex.Com. App., 267 S.W. 703. And in passing it may be observed that each appropriation made by this general appropriation bill for the numerous other state parks is made in the same manner as the one in question.

■ Appellant further contends, however, that the caption to the general appropriation act made no mention of certain matters contained in the body of Subd. 91 appropriating the $1,500,000, and that for that reason such appropriation is void under said Sec. 35. The matter complained of seems to be found in the statement of appellant that "the conclusion is inescapable that the portion of the Senate Bill No. 423, appropriating $1,500,000 for the purpose of buying a large tract of land for a State Park or a National Park, was not mentioned in the caption, and therefore void." The appropriation act did not authorize the purchase of any land, but merely made the appropriation to pay for land already purchased or to be purchased by the Texas State Parks Board under authority theretofore given it by the Legislature. The appropriation act recites that the appropriation is made to pay for land which Chap. 4, Acts 1939, 46th. Legislature, Subd. 2, under the title State Parks, p. 520, had authorized the Texas State Parks Board to purchase. A casual reading of said Subd. 91, appropriating the $1,500,000, shows that the writer thereof had before him Chap. 4, Acts 1939, 46th Legislature, p. 520, and clearly shows that reference was made to this act to specifically designate the purpose for which the $1,500,000 was appropriated.

■ Appellant further contends that the appropriation bill attempts to amend a prior law in contravention of Sec. 36 of Art. 3 of the Constitution, which provides: "No law shall be revived or amended by reference to its title; but in such case the act revived, or the section or sections amended, shall be re-enacted and published at length."

In this connection, appellant seems to contend that the appropriation act in question sought to amend Arts. 6077b and 6077c, R.S.1925, which were prior acts creating the Big Bend Park and authorizing the Texas State Parks Board to acquire the lands described for that purpose, but reserving to the State for the benefit of the school fund of Texas the minerals in certain of the lands. Obviously this conten-

tion overlooked Senate Bill No. 123, Chap. 4, Acts 1939, 46th Legislature, p. 520, wherein new and additional provisions are made creating the Big Bend National Park, effecting a conveyance of these formerly reserved minerals to the Board, and providing for their payment, and superseding the former acts cited by appellant with respect to these minerals. This later act is the one referred to in the appropriation bill, and it specifically provides in Sec. 3 for the purchase of all lands by the State Parks Board without mineral reservations. Sec. 4 provides that where "the mineral estate has been severed from the surface estate in Public Free School lands situated within the boundaries of the area which has been designated herein as the Big Bend National Park, the Legislature of the State of Texas hereby transfers and conveys all of the mineral estate now owned by the State of Texas for the benefit of its Public Free School Fund to the State of Texas for park purpose only and the title to said mineral estate shall vest upon the payment of the consideration hereinafter set out." The act further provides that the minerals shall be paid for at the rate of fifty cents per acre, and provides the method by which the Commissioner of the General Land Office, in collaboration with the State Parks Board shall ascertain the number of acres covered by said mineral estate; and provides that there shall be paid out of the State Treasury from the general funds from the appropriation therein made, or any appropriation thereafter to be made, sufficient funds to pay for said minerals when it has been ascertained the amount to be due therefor; and Sec. 8 of said act provides for the conveyance of said lands to the agencies of the Federal Government for park purposes only after the State has acquired title to the lands.

The appropriation bill clearly shows that the appropriation was being made to pay for the lands and minerals which the Board had been authorized to purchase under Chap. 4, Acts 46th Legislature; and reference to this act was made in order to designate the purposes for which the $1,500,000 appropriation was made. It did not seek to amend, add to, nor correct in any manner Chap. 4, Acts of the Regular Session of the 46th Legislature, which was enacted two years prior to the enactment of the appropriation statute in question. The provision or limitation with regard to payment for minerals or other lands belonging to the State School Fund simply referred to Chap. 4, Acts of the Regular Session of the 46th Legislature, which provides for the same things and authorizes the payment therefor as prescribed in that act, or by further appropriation.

The provision contained in the appropriation act with regard to the reverter of the lands in the event the Federal Government ceases to use the property for park purposes is not material, because the original act authorized the conveying of the property to the Federal agency for park purposes only, and the reverter clause would have been authorized under the original act. Nor is the prior act authorizing the conveyance of the lands to the Federal agency involved in this attack upon the appropriation bill in question. In any event, no one could be injured by placing in the contract conveying the land to the Federal Government the reverter clause prescribed, and such reverter clause provision made no limitation upon the use of the $1,500,000 appropriated for the purchase of the land by the State of Texas, to be held and controlled by the Texas State Parks Board.

Nor is the appropriation act in violation of Sec. 4 of Art. 14 of the Constitution of Texas, which provides that "no certificate for land shall be sold at the Land Office except to actual settlers upon the same, and in lots not to exceed one hundred and sixty acres." This section has reference exclusively to sales made by the Land Office and not to sales or grants made in the instant case. We have already pointed out that the Legislature may buy lands and use them for park purposes, and manifestly such action does not offend the constitutional provision relating to an entirely different matter. Sanborn v. Gunter, 84 Tex. 273, 17 S.W. 117.

The judgment of the trial court is affirmed.

Affirmed.