Honorable H. Tati Santiesteban Chairman Natural Resources Committee Texas State Senate P.O. Box 12068 Austin, Texas 78711 Mattox
Re: Authority of a home rule city to convey land to the state for use as a park, where the transfer is made at a price below market value (RQ-1572)
Dear Senator Santiesteban:
You ask a question about the state's acquisition of a specific parcel of land owned by the city of El Paso and administered by the city's Public Service Board. This land, consisting of approximately 6,833.9 acres, is within the boundaries of the Franklin Mountains State Park which were delineated by the legislature in 1979 and redrawn to exclude five sections of land in 1987. See Acts 1979, 66th Leg., ch. 736, at 1804; Acts 1987, 70th Leg. ch. 304, at 1676. The Parks and Wildlife Code establishes the park under the jurisdiction of the Parks and Wildlife Department and provides that the department "shall acquire by purchase, gift, lease, or condemnation all of the land described" in the 1979 legislation, except for the tracts deleted in 1987. Parks Wild. Code §§ 22.221; 22.222(a). A proposed agreement between El Paso and the state provides for transferring the land to the state at a "modest price" that is considerably less than market value.
The Public Service Board of the city of El Paso is appointed by the city and has responsibility for administering the water system for the city and the bond issues supporting the water system. The lands in question have been designated Public Service Board lands, and the board holds them as agent for the city. See V.T.C.S. art. 1109a; San Antonio Indep. School Dist. v. Water Works Bd. of Trustees, 120 S.W.2d 861 (Tex.Civ.App.-Beaumont 1938, writ ref'd). Concern has been expressed as to the city's authority to transfer these lands to the state at a time when the Public Service Board of the city of El Paso still has outstanding bonds.
Your question is as follows:
 Does the City of El Paso, through its duly elected governing body, have the power and authority to make the transfer of land to the State for inclusion in the state park system at a price which may be less than market value?
Your question raises the following three issues: the effect of the outstanding bonds on the city's transfer of these lands; the statutory authority for selling the land at less than market value; and the constitutionality of this transaction under article III, section 52, of the Texas Constitution.
We will first address your concern that provisions of prior bond issues might prevent the city of El Paso from selling this property at less than market value. The Public Finance Section of this office has reviewed the relevant bond documents and has found that the management and control of the city waterworks system (hereinafter the "system") is vested in the Trustees of the Public Service Board by city ordinance of May 22, 1952. Included as subsections D and E of section 12 of this ordinance are covenants on the disposition of the system's property which have been carried forward by all subsequent bond ordinances.
Subsection D is a general covenant by which the board agrees not to take any action whereby the lien of the bonds on the revenues of the system might be lost or impaired. Subsection E specifically addresses the board's authority to dispose of the property of the system. This covenant reads in part as follows:
E. That the city will not sell, encumber or in any manner dispose of the system or any substantial part thereof, including any and all extensions and additions that may be made thereto, until the bonds herein authorized to be issued shall have been paid in full as to both principal and interest (provided that this covenant shall not be construed to prevent the disposal by the city of property which in the Board's judgment has become inexpedient to use in connection with the system . . .).
We are informed that the property to be sold does not generate any revenues from which the debt service on the bonds is paid, nor is it used for water or wastewater system functions. If this information is correct and if the board makes the required determination, these covenants do not prevent the sale of this property. The city's contract with the bondholders protects them from property sales which will impair their source of repayment and permits sales of property not needed for the system. Sale of the land in accordance with these provisions, even if at less than market value, will not impair the bondholder's interests. See generally City of Aransas Pass v. Keeling, 247 S.W. 818 (Tex. 1923).
We next consider whether the city of El Paso has statutory authority to transfer this land to the Parks and Wildlife Department at less than market value.
Sections 22.221 through 22.223 of the Parks and Wildlife Code authorize the Parks and Wildlife Department to acquire the specific acreage you inquire about. Acts 1979, 66th Leg., ch. 736, at 1804. The bill analysis of the 1979 bill which established the Franklin Mountains State Park states as follows:
Background:
 The only state park near El Paso, Hueco Tanks State Historical Park, is located twenty-six miles east of the city and is a limited access, historical preservation park. The city and county parks are small and for `playground' recreation.
 The proposed park in the Franklin Mountains includes the majority of the high mountains in the Franklin Range and some of the remaining wild desert mountains in El Paso County. The area contains many unique features, such as prehistoric and historic archaelogical sites. . . .
The closeness of the proposed area to El Paso would enable residents and visitors to hike mountain trails and study a unique natural environment.
Purpose:
 The bill would require the Texas Parks and Wildlife Department to acquire the portion of the Franklin Mountains of El Paso County north of Trans-Mountain Road (Loop 375) to create a state recreational park. The department would acquire the land by purchase, gift, or condemnation with funds from the Texas Park Development Fund.
Bill Analysis, Tex.H.B. 867, 66th Leg. (1979).
Thus, the Parks and Wildlife Code provisions were adopted to govern the acquisition of identified land which included the specific land in question. The legislature amended these provisions in 1987 to facilitate the proposed transfer agreement which is the subject of your request. The Bill Analysis to the 1987 legislation stated in part:
Background:
 In 1979 the 66th Legislature created the Franklin Mountains State Park. The park is . . . the largest urban park in the United States. The Public Service Board of El Paso owns land that is within the boundary of the Park (approximately 8,100 acres) which is presently valued at $40,000,000. The State is currently in litigation involving the purchase of this parcel of land from the City of El Paso. The Public Service Board has offered to sell to the State 4,780 acres . . . at a substantially lower price ($250,000) if the 5 sections (3,320 acres) on the eastern border of the park may be exempted as proposed park lands. The property described as Sections 24, 17, 16, 9, and 4 are considered to be prime developable lands and should not be a part of a wilderness park.
Purpose:
 Provides that 5 sections of land within the Franklin Mountains State Park be deleted from the land described for acquisition in Section 2 of the Act.
Bill Analysis Tex.H.B. No. 1839, 70th Leg. (1987).
The legislature thus contemplated that sections 22.221 through 22.223 of the Parks and Wildlife Code would provide comprehensive statutory authority for the department to acquire land designated for Franklin Mountains State Park, including the authority to acquire land from the city of El Paso at less than market value. These provisions constitute a specific law authorizing the sale of the El Paso property to the department on these terms and they remove this transaction from general statutes that ordinarily govern the sale of land by a city, in particular from chapter 272 of the Local Government Code. See, e.g., Gov't Code §§ 311.003; 311.023; 311.025. See also Flowers v. Pecos River R. Co.,156 S.W.2d 260, 263 (Tex. 1941, writ granted); Townsend v. Terrell,16 S.W.2d 1063, 1064 (Tex. 1929) (specific statute controls over general statute).
Chapter 272 of the Local Government Code requires political subdivisions to comply with notice and bidding requirements before selling or exchanging land. Local Gov't Code § 272.001. These notice and bidding requirements do not apply to land conveyed to a governmental entity that has the power of eminent domain, but such land may not be conveyed for less than its fair market value. Id. Sections 22.221 through 22.223 of the Parks and Wildlife Code impliedly excepts the transfer of the Franklin Mountains land from the requirements of chapter 272 of the Local Government Code. Thus, the requirement that land be conveyed at not less than market value does not apply to the transfer of the designated land from El Paso to the Parks and Wildlife Department.
We finally consider whether article III, section 52, of the Texas Constitution prohibits the city of El Paso from selling the land to the department at less than market value. Article III, section 52 provides in part:
 (a) Except as otherwise provided by this section, the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever. . . .
Tex. Const. art. III, § 52. The proposed sale at less than market value involves an element of donation.
In Texas Nat'l Guard Armory Bd. v. McCraw, 126 S.W.2d 627 (Tex. 1939), the Supreme Court determined that the attorney general was within his right in refusing to approve revenue bonds to finance the construction of armories for the Texas National Guard. The attorney general argued that part of the security for the bonds would be invalid because it would consist of rentals from armory sites donated to the Armory Board by incorporated cities in violation of article III, section 52, of the Texas Constitution.126 S.W.2d at 630. The Supreme Court stated as follows in response to this argument:
 This Act [the National Guard Armory Board Act] does not undertake to authorize municipal corporations to donate sites for armories; nor has the Legislature enacted any law which undertakes to confer on such cities that power. Since the Legislature has not by law authorized municipal corporations to donate sites for armories, it becomes unnecessary to decide the power of the Legislature to authorize municipal corporations to lend their aid to the Board by donating sites for armories under the provisions of Section 52 of Article 3 of the Constitution.
126 S.W.2d at 638. Thus, the Supreme Court did not determine whether a city could constitutionally donate land to the National Guard Armory Board.
In Attorney General Opinion H-108 (1973), this office considered a question very similar to the one not reached in Texas Nat'l Guard Armory Bd. v. McCraw and decided that the city of Beaumont could give the Department of Mental Health and Mental Retardation ten acres of land in fee simple as a site for constructing a ward building at the Beaumont State Center for Human Development.
The opinion stated as follows:
 The fact that the transaction is denominated `a gift' does not invalidate it unless the Beaumont City charter contains restrictive provisions unknown to us. The proposed use is clearly for a public purpose and thus does not violate Article 3 §§ 50, et seq., of the Texas Constitution. Similar donations were involved and approved by the courts in El Paso County v. City of El Paso, . . . [357 S.W.2d 783 (Tex.Civ.App.-El Paso 1962, no writ)], and City of San Antonio v. Congregation of Sisters of Charity, 360 S.W.2d 580 (Tex.Civ.App.-[Waco] 1962, [writ ref'd, n.r.e.]).
Actually, the transfer is not a gift. The improvement of the property and the consequent benefit to the city of Beaumont supply consideration for the transaction. In the El Paso case, supra, the county order approving the transaction recited as consideration for its transfer that `it will reduce the fire insurance rate in El Paso.'
Attorney General Opinion H-108 at 4 (1973).
The city of El Paso similarly benefits from transferring its land to the Parks and Wildlife Department because it will be maintained at state expense as part of a state recreational park easily accessible to residents of the city. Consideration for the transfer of land to the state is provided by these benefits to the city, and not merely by the cash sum it receives. See Attorney General Opinion H-1256 (1978).
The judicial opinion in King v. Sheppard, 157 S.W.2d 682
(Tex.Civ.App.-Austin 1941, writ ref'd w.o.m.) addresses a question analogous to the question before us. The legislature appropriated funds to purchase land for the Big Bend National Park which would be deeded to the federal government to use for national park purposes only. A taxpayer challenged the appropriation as violating sections 50, 51, and 52 of article III, which "inhibit the lending or giving of the credit of the State, or the granting of public money . . . to any individual, association, corporation, etc." 157 S.W.2d at 686.
The court quoted at some length from Malone v. Peay,17 S.W.2d 901 (Tenn. 1929), a Tennessee case dealing with the transfer of state land to the federal government for a national park. The Tennessee court cited authorities to the effect that the United States was not an individual, association, or corporation within state constitutional provisions forbidding the gift or grant of public funds. The court also stated that a transfer of the lands from the state to the United States for park purposes would not impair the beneficial rights of the people of Tennessee, who are also citizens of the United States. The transfer relieved the state from the continuing expense of maintaining the park, while its residents still had the benefits of the park system.
The King v. Sheppard court concluded that the Tennessee decision was sound and should be followed as the law of the case.157 S.W.2d at 686. Much of the reasoning followed in King v. Sheppard applies to the transfer of the Franklin Mountains property from El Paso to the Parks and Wildlife Department. The benefits of the Franklin Mountains State Park will accrue to El Paso, its residents and visitors. Moreover, authorities from other jurisdictions have held that the state is not an individual, association, company or corporation within constitutional provisions comparable to article III, sections 50, 51, and 52. See, e.g., City of Sacramento v. Adams, 153 P. 908 (Cal. 1915) (city donated land to state for site for state buildings); Lancey v. King Co., 45 P. 645 (Wash. 1896) (use of county land for public improvements undertaken by state and United States); Ransom v. Rutherford County, 130 S.W. 1057 (Tenn. 1910) (city and county bonds finance purchase of sites and construction of buildings for state teacher's college).
On the basis of the reasoning and authorities cited above, we believe that the city of El Paso may transfer the land in question to the Department of Parks and Wildlife at less than market value without violating article III, section 52 of the Texas Constitution.
Our opinion is limited to the questions discussed. We do not consider any contract provisions, home rule charter provisions, or other provisions not expressly addressed.
 SUMMARY
Under sections 22.221 through 22.223 of the Parks and Wildlife Code, the city of El Paso may sell land at less than market value to the Parks and Wildlife Department for inclusion in the Franklin Mountains State Park. The transfer at less than market value does not violate article III, section 52, of the Texas Constitution. Based on the information submitted to us, the fact that the land has been designated land of the El Paso Public Service Board and that the board has outstanding bonds does not bar sale of this land at less than market value.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Mary Keller First Assistant Attorney General
 Lou McCreary Executive Assistant Attorney General
 Judge Zollie Steakley Special Assistant Attorney General
 Rick Gilpin Chairman, Opinion Committee
 Prepared by Susan L. Garrison Assistant Attorney General