CRAIG *v.* NORTH MISSISSIPPI COMMUNITY HOSPITAL.

In Banc. Mar. 28, 1949.

(39 So. (2d) 523)

12

**R. O. Arrington**, Assistant Attorney General, for appellant.

F. G. Thomas, Noel Monaghan, T. J. Tubb, Frank E. Everett, Jr., and T. Harvey Hedgepeth, for appellee.

24

26

**Hall, J.**

The appellee filed a petition for a writ of mandamus against appellant in the Circuit Court of Hinds County; the appellant filed a demurrer thereto, which demurrer was overruled and the appellant declined to plead further and appealed to this Court.

Since for the purpose of this hearing the demurrer admits all the facts set out in the petition, it is necessary to detail those facts. The petition alleges that the North Mississippi Community Hospital is a non-profit, nonsectarian corporation organized and chartered under Chapter 100 of the Mississippi Code of 1930. A copy of the charter of incorporation is filed as an exhibit to the petition and shows that appellee is, in fact, a nonprofit corporation, that it is organized for the public good and as a benevolent and charitable undertaking for the general welfare of the public; that its purpose is the establishment, support and maintenance as a benevolent undertaking and for the general welfare, of a private hospital, and for affording charitable and benevolent treatment of

acutely ill and indigent persons and affording the facilities for the treatment of all acutely ill persons without regard to race, color, or creed; that the general welfare of society, not individual profit, is the object for which the corporation is created, and that the members thereof are not stockholders in the legal sense of the term and that no dividends or profits shall be divided among them. The petition also alleges that for the purpose of carrying out its objects, the appellee erected a hospital now located within the corporate limits of the City of Tupelo, Mississippi, and has continuously operated said hospital in accordance with the powers granted by this charter since its completion about the year 1935.

The petition further alleges that the appellee is such a corporation as contemplated by clause (b), Section 1 of House Bill 164, enacted by the Legislature of the State of Mississippi at its regular 1948 session, which Act was an amendment to Section 6 of Chapter 363 of the Laws of Mississippi of 1946; that by due and proper resolution of its board of directors appellee sought to obtain a grant of aid in accordance with said statutes, and submitted to the Mississippi Commission on Hospital Care copies of its charter of incorporation, its constitution and by-laws, and inventory of its existing facilities, evidence that the Treasury Department of the United States has granted it an exemption from income and certain other taxes, and evidence that the Mississippi State Tax Commission has likewise granted exemption from such taxes; that the appellee has submitted deeds to its real property and evidence of funds on hand in the amount of $100,000 as its share of the cost in the enlargement of its facilities, and has submitted proper application to said Commission on Hospital Care, accompanied by plans, drawings, and specifications in respect to the enlargement of its facilities, and that by said application it sought the approval by said Commission of a grant in an amount tentatively fixed at $205,880, of which $103,920 is to come from State

funds and $101,960 from Federal funds, channeled through said Commission.

The petition further alleges that said Commission has made investigation and has found and determined that the hospital of appellee is reasonably necessary as an integral part of the state-wide hospital plan, that there exists in the area to be served by same a pressing need for the hospital and the enlargement thereof, that said hospital is located at a place where it will best serve the needs of its area, and that funds available for such enlargement program will be adequate for such purpose, and that the hospital of appellee is so erected and the enlargement thereof will be so completed and so equipped that the same will be operated in accordance with the standards, rules and regulations prescribed by said Commission to provide for the indigent sick and to promote the public health and welfare, and that said institution will be continuously owned, operated and controlled on a strictly nonprofit basis; that the appellee has agreed to enter into a formal contract with the Mississippi Commission on Hospital Care to carry out the purposes of said statutes so as to insure the location, design, construction, and operation of said hospital in such manner that the services thereof will be available to the people of Mississippi served by said hospital at the lowest possible cost and to further insure that appellee shall adequately and properly provide for the indigent sick and encourage and promote the health and general welfare of the people in the area which said hospital shall serve, and that said contract shall also insure that the public funds alloted to said hospital shall be spent under the direction and control of the Mississippi Commission on Hospital Care.

There is exhibited a copy of said application which shows that appellee agrees to bind itself in every respect in accordance with the aforesaid statutes as contractual covenants effective as such independently of the force and effect of said laws, that it shall at all times make avail-

able at least 10% of the bed capacity of its hospital as charity facilities for the use of charity patients qualified under the State Charity Hospitalization Law, that the books, records and accounting system of appellee shall be in accordance with the recommendations of said Commission and subject to its inspection at any time, that the hospital will be operated with the purpose of providing maximum hospital benefits to the citizenship at minimum cost to the patient, that appellee will comply with the minimum standards of maintenance and operation as adopted by said Commission and as they may be amended from time to time, that appellee's hospital and all its facilities shall be available at all times as a part of the state-wide hospital plan sponsored by said Commission, that it will contribute funds, equipment and personnel which it may have or can make available toward the promotion and carrying on of a state-wide program of nursing education to be inaugurated and carried on by said Commission in cooperation with participating hospitals, all to the extent and in the manner provided and contemplated by the terms of Chapter 363 of the Laws of 1946, that all construction contracts will be performed by the lump sum, fixed price, contract method, upon competitive bidding, to the lowest responsible bidder after final working drawings and specifications shall have first been approved by said Commission, and that said Commission and its representatives will have access at all times to the work during the preparation and progress thereof. The application contains other obligations assumed by appellee which are unnecessary to mention herein.

The petition further alleges that at a meeting of said Commission duly held on August 16, 1948, a resolution was unanimously adopted approving the application of appellee for such grant in federal and state funds for the enlargement of the facilities of said hospital, and a certified copy of said resolution is attached as an exhibit to the petition.

The petition further alleges that appellee has incurrred certain legitimate expenses amounting to the sum of $165, which expenditure has been made for a purpose for which appellee would be entitled to assistance pro rata from the state in the amount of $55, and that said item of expenditure has been submitted to, approved, examined, and found to be in good order by, said Commission and that said Commission has approved and allowed the payment thereof from said funds to be charged against the total grant of said funds approved and set up by said Commission for advancement to appellee, and said Commission has directed the chairman and the executive director of the Commission to execute and deliver to appellee a requisition upon the auditor of public accounts of the State of Mississippi for the immediate cash advancement of said funds in said amount of $55, a copy of which requisition is attached as an exhibit to the petition; that thereupon said requisition was forwarded to appellant with request for issuance of a warrant on the state treasury for the payment thereof and that appellant refused to issue said warrant, and that said refusal was not a discretionary act and was not for the reason that funds were not available in the state treasury and was not for want of a proper appropriation by the Legislature of the State of Mississippi and was not for any reason of insufficiency in the form, context or otherwise of said requisition, but that such failure and refusal was based solely upon advice from the office of the Attorney General of Mississippi, and that said failure and refusal to issue the requested warrant was an act of default in the performance of an official duty imposed by valid law upon the appellant.

The petition further alleges that said House Bill No. 164 of the 1948 session of the Legislature was enacted by the concurrence of more than two-thirds of the members of each branch thereof, and that in order to make possible the proposed grants-in-aid as provided by the aforesaid statutes, the Legislature of the State of Mississippi cause to be appropriated funds deemed sufficient for such pur-

poses, such appropriation being House Bill No. 1008, and that said appropriation bill was enacted by the concurrence of more than two-thirds of the members of each branch of the Legislature.

The petition further alleges that the act of default of the appellant deprives appellee of moneys which it is now lawfully entitled to and that without the issuance of such warrant requested by appellee there is no manner, method or means by which appellee can collect and receive said money from the state treasury; that appellee is entitled to a writ of mandamus to compel appellant to perform his duty in the premises and that appellee has no other plain, adequate and speedy remedy in the ordinary course of law, and that the issuance of such a writ would in nowise adversely affect the public interest.

Appellant's only ground of demurrer to the aforesaid petition is that House Bill No. 164, Chapter 430, Laws of 1948, is null and void in that it violates Sections 14, 183 and 258 of the Mississippi Constitution of 1890. The demurrer having been overruled by the lower court, the sole question presented by this appeal is the constitutionality of said House Bill 164. To get the background of said House Bill 164 it is necessary to review briefly the law which it amends, viz., Chap. 363 Laws of 1946.

By the said Act of 1946 the Legislature created the Mississippi Commission on Hospital Care, provided for its appointment terms of office and compensation of its members, and authorized it to adopt rules for the transaction of its business and to keep permanent and complete public records and minutes of all its proceedings. Said Commission was designated as the agency of the State of Mississippi to set up and administer any state-wide plan for the construction, equipping and maintenance of hospitals, nurses' homes, health centers, clinics and related facilities which are now or may hereafter be required to comply with any federal law, and to receive and administer any funds that may be provided by an act of Congress for such purposes and that may be made available

for such purposes from any other sources, public or private. Among other things said Commission was authorized to require compliance with minimum standards of maintenance and operation by hospitals receiving federal or state aid under said chapter, and the duty was specifically enjoined upon the Commission to prepare and develop a state-wide hospital plan having as its long-time objective the establishment of a sufficient number of hospital and clinic facilities in this state to serve the needs of the state and to make such facilities reasonably accessible to the entire population of the state. The Commission was also charged with the duty to make grants-of-aid to properly constituted authorities to acquire real estate and to construct thereon hospitals, nurses' homes, health centers, clinics and related facilities throughout the state, including the reconstruction, remodeling, or addition to any hospital facility which has been or may be acquired by such local authorities for use as a community hospital, each such structure to be an integral part of the state hospital plan, and to enter into contracts with local hospitals or hospital groups so as to insure that such hospitals will be located, designed, constructed and operated in such manner that the services thereof will be available to the people of Mississippi at the lowest possible cost. Section 6 of said Chapter 363, Laws of 1946, limited the aforesaid grants-in-aid to publicly owned and operated institutions.

Said Section 6 was amended by House Bill 164, Chapter 430, of the Laws of 1948, so as to provide that said grants-of-aid may be made not only to publicly owned and operated institutions but also to ''those non-profit institutions owned and operated by a corporation or association no part of the net earnings of which inures, or may lawfully inure, to the benefit of any private shareholder, group or individual.'' The amendment provides that such nonprofit institution shall be subject to and governed by all the provisions of this chapter in all functions which are a part of the state hospital plan; that grants shall be

made only when the Commission shall find and determine that such hospital or other facility is reasonably necessary as a part of the long-range, state-wide hospital plan, that there exists in the area to be served a need for the hospital or other facility, that it will be located at a place where it will best serve the needs of said area, that the funds available will be adequate, and that the hospital will be erected, equipped and operated in accordance with the standards prescribed by the Commission and on a strictly nonprofit basis. The amendment further provides that if any hospital to which a grant is made shall, at any time, within twenty years after the date of such grant, be sold or transferred to any person, agency or organization which is not qualified to receive a grant or which is not approved as a transferee by the Commission, or cease to be a nonprofit institution, a lien in favor of the state shall attach to the property thereof and the state shall be entitled to recover from the transferrer or transferee (or, in the case of an institution which has ceased to be a nonprofit organization, from the owners thereof) the amount of money advanced by the state to such institution less reasonable depreciation. The amendment also provides that no payment of money shall be made until the site, plans and specifications for the location, construction and equipping of such institution, or the improvement, enlargement or expansion of any existing facility shall have been approved by the Commission; that the Commission shall satisfy itself completely that the sources of funds for the permanent maintenance of the hospital are adequate to insure its continued efficient maintenance and operation, and that the Commission shall have the right to inspect the books of local hospitals and to counsel with local management in order to assist in maintaining sound accounting principles, efficient management, and a high standard of service.

From the foregoing it will be seen that the Legislature has thrown reasonable safeguards over the construction, enlargement, expansion and operation of hospitals and

related facilities owned by nonprofit, nonsectarian corporation such as the appellee in this case, to the end that such facilities shall be made available to the people of this state, without regard to race, color or creed, as an integral part of the over-all, long-range, state-wide hospital plan set up by the Legislature, and to the end that at least 10% of all hospital beds shall be set aside for use by strictly charity patients and that the remainder shall be available to pay-patients at the lowest possible cost consistent with efficient management and operation in accordance with the regulations of the Mississippi Commission on Hospital Care. By Chapter 79 of the Laws of 1948 the Legislature appropriated five million dollars to said Commission for the purpose of carrying out the provisions of the above mentioned statutes and provided that against said appropriation ''the state auditor shall issue his warrant upon requisition signed by the proper person, officer or officers in the manner and for the purpose and within the amounts provided for by law.''

Appellant contends that the amendment here under attack violates Section 14 of the Mississippi Constitution of 1890, which provides ''No person shall be deprived of life, liberty, or property except by due process of law.'' In support of this position appellant quotes one brief excerpt from Miller v. Tucker, 142 Miss. 146, 105 So. 774, 780, to the effect that ''To allow money to a private person or organization, *to be dispensed according to the will and judgment of such private person, uncontrolled by law* (Italics supplied), would be to take the taxpayer's property without due process of law contrary to section 14 of the state Constitution, and to the Fourteenth Amendment of the Constitution of the United States.'' That case dealt with illegal appropriations of money by a board of supervisors and is wholly different on the facts from the case at bar; there the only violation of Section 14 of our state constitution was found in the fact that the money so appropriated was to be dispensed according to the will and judgment of a private person and uncon-

trolled by law. The foregoing summary of the statutes and facts in the case now before us shows that the money appropriated to appellee is not to be dispensed at the will and judgment of appellee, uncontrolled by law, but, on the contrary, is to be expended under the rules and regulations and supervision of a state agency. In speaking of "due process of law" this Court said in the case of Albritton v. City of Winona, 181 Miss. 75, 178 So. 799, 804, 115 A.L.R. 1436, "When applied to substantive rights it is now interpreted to mean that the government is without the right to deprive a person of life, liberty, or property by an act that has no reasonable relation to any proper governmental purpose, or which is so far beyond the necessity of the case as to be an arbitrary exercise of governmental power." The law now under attack is clearly a statute which does bear a reasonable relation to a governmental purpose as expressed in Section 86 of the Mississippi Constitution of 1890 which provides "It shall be the duty of the legislature to provide by law for the treatment and care of the insane; and the legislature may provide for the care of the indigent sick in the hospitals in the state." We therefore find that Section 14 of the Constitution is not violated by Chapter 430 of the Laws of 1948.

Appellant also contends that said chapter violates Section 183 of our constitution which provides that "No county, city, town, or other municipal corporation shall hereafter become a subscriber to the capital stock of any railroad or other corporation or association, or make appropriation, or loan its credit in aid of such corporation or association." It will be noted that the quoted section applies only to counties and municipalities. We are not here concerned with any appropriation of a county or municipality, but only with one made by the Legislature directly out of the state treasury, and the cases dealing with a violation of Section 183 have no application here.

Appellant finally contends that said chapter violates Section 258 of the Mississippi Constitution of 1890 which provides: "The credit of the state shall not be pledged or loaned in aid of any person, association, or corporation; and the state shall not become a stockholder in any corporation or association, nor assume, redeem, secure, or pay any indebtedness or pretended indebtedness alleged to be due by the state of Mississippi to any person, association, or corporation whatsoever, claiming the same as owners, holders, or assignees of any bond or bonds, now generally known as 'Union Bank' bonds and 'Planters Bank' bonds."

A sufficient answer to this contention is that under said Chapters 430 and 79 of the Laws of 1948 the Legislature has not attempted to pledge or loan the credit of the state, but has simply appropriated funds already in the state treasury pursuant to the authority of Section 66 of the Mississippi Constitution of 1890 which provides "No law granting a donation or gratuity in favor of any person or object shall be enacted except by the concurrence of two-thirds of the members elect of each branch of the legislature, nor by any vote for a sectarian purpose or use." We do not base this decision solely upon the section just mentioned, nor do we hold that the Legislature has the unbridled authority to donate public money to private purposes even by a two-thirds vote of both houses, but we do hold that the legislature has the authority to appropriate public funds out of the state treasury for the care of the indigent sick in the nonprofit, nonsectarian hospitals of this state in accordance with the above quoted Section 86 of the Constitution, particularly where the expenditure of such funds for such purpose is under the supervision and control of a state agency. Our conclusion is abundantly supported by the case of Albritton v. City of Winona, supra, from which we quote briefly. " 'The end being legitimate . . . the means is for the legislature to choose,' Carmichael v. Southern Coal & Coke Co., 301 U. S. 495, 57 S.

Ct. 868, 876; 81 L. Ed. 1245, 109 A.L.R. 1327, the only limitation thereon under due process being that the means chosen must not be so far beyond the necessity of the case as to be an arbitrary exercise of governmental power. . . . Growth is the life of the law, and when it ceases to grow and keep pace with social and economic needs it becomes a hindrance instead of an aid to the public welfare. . . . 'If the end be public, it matters not that it is attained through a private channel.' Hares American Constitutional Law, p. 286."

The judgment of the lower court is therefore affirmed. Affirmed.