BEDFORD COUNTY HOSPITAL *et al. v.* BROWNING,

Governor, *et al.*

(*Nashville,* December Term, 1949.)

Opinion filed December 17, 1949.

Cox, Taylor, Epps, Miller & Wilson, of Johnson City, for complainants.

Roy H. Beeler, Attorney General, William F. Barry, Solicitor General, and Nat Tipton, Assistant Attorney General, for defendants.

MR. JUSTICE PREWITT delivered the opinion of the Court.

This is an appeal from a decree of the Chancery Court of Davidson County, holding Chapter 74, Public Acts of 1949, authorizing the issuance of $15,000,000 of bonds and the donation of the proceeds thereof to various hospitals, constitutional and valid and not in conflict with Article 2, Section 31, of the Constitution.

The complainants, composing a number of hospitals who have duly qualified for Federal Aid under the provisions of the Hill-Burton Federal Act, 42 U.S.C.A. Section 291 et seq., filed this bill against the defendants, who composed the State Funding Board, praying for a declaratory judgment as to the validity of Chapter 74, Public Acts of 1949. It was conceded in the court below that a proper case for a declaratory judgment was presented; and, therefore, the sole question before this Court is whether the above-mentioned Act offends Article 2, Section 31, of our Constitution.

The complainants are in four classes:

1. Certain of the hospitals are owned and operated exclusively by counties.

2. Others are owned solely and alone by certain municipal corporations.

3. One is owned jointly by county and city.

4. Others are owned by nonprofit general welfare corporations.

In 1947 the Legislature enacted two statutes, Chapters 13 and 16 of the Public Acts of 1947. Chapter 13 is a general statute applicable to all hospitals and was enacted in the exercise of the police powers of the State which authorizes it to regulate the healing arts. By express terms, Chapter 13 sets up a board to license

all hospitals, public or private. It provides that no hospital shall be operated in this State after a day fixed in the Act until the same shall have been duly licensed by this board. It provides for applications for licenses, schedules all fees to be paid by the applicant, provides that the licensing authority shall have authority to make rules and regulations, to set up minimum standards, to revoke licenses theretofore issued upon certain conditions, and for the inspection and enforcement of such regulations and minimum standards theretofore fixed.

Chapter 16, Public Acts of 1947, was enacted in order to allow hospitals in the State to comply with the provisions of the Hill-Burton Federal Hospital Statute, which latter Act authorized grants of Federal funds for hospitals under certain conditions. Its relevant provisions are as follows:

1. A survey of existing facilities, both public and private.

2. The development of an overall plan for the construction of hospitals.

3. Complete co-operation with the Federal Government.

4. The establishment of minimum standards for the maintenance and operation of hospitals to be constructed thereunder.

5. The transmission of all plans for the construction of hospitals through the Commissioner of Health to the Federal Government for Federal Aid.

6. Supervision by the Commissioner of Health of the erection and construction of such hospitals.

Construing these two Acts together, they authorize the development of an overall plan, the prospect being for Federal Aid, and after the erection of such hospitals,

they can be regulated under the provisions of Chapter 13, Public Acts of 1947. There is no doubt, in reading these Acts together, that the State acquires no proprietary interest in any hospital in the State. Then the Legislature passed Chapter 74, Public Acts of 1949, amending Chapter 16, Public Acts of 1947. This Chapter 74 authorizes the State to make grants to the sponsors of the so-called Federal Aid Hospitals in an amount not to exceed 33⅓% of the estimated cost of the hospital and equipment, the amount to be granted not to exceed that to be expended by the sponsor thereof. A second provision authorizes the issuance of bonds not to exceed $3,000,000 per annum, for the years 1949-1953 inclusive, to provide funds for these grants. Another provision assured the State of freedom from liability for the cost of operating such hospitals after completion. A fourth provision authorizes retroactive grants in the amounts above set forth where the hospitals had theretofore been completed through the efforts of the sponsor.

It is conceded by the defendants that the erection and maintenance of hospitals constitutes a public purpose, and defendants do not dispute the fact that the State might by direct act establish hospitals and maintain them at such places in the State as it deemed proper. The defendants state that this would be the direct effect of a proper purpose and would not constitute, under any stretch of the imagination, the State lending its credit in aid.

The pertinent part of Article 2, Section 31, of our Constitution reads as follows: "The credit of this State shall not be hereafter loaned or given to or in aid of any person, association, company, corporation, or municipality; . . . ."

The obvious purpose of this Section of our Constitution was to prevent the State from using its credit as a gratuity or donation to any person, corporation, or municipality. It is further obvious that it was not designed to prevent the State from using its credit to aid persons, corporations, or municipalities if required to accomplish a State or public purpose, or to fulfill a State duty or obligation under its police power. Under the authorization, the Legislature and not the courts is the exclusive judge of the manner, means, agencies, and methods to meet and fulfill these purposes. If the Legislature has taken the position that the public welfare requires the State to participate with the Federal Government and with the proposed hospitals to acquire for the benefit of the State and its people, additional hospital buildings and facilities, even without technical State title or ownership but under reasonable State control and regulation, the courts could not interfere without substituting their judgment upon a matter of policy for that of the Legislature. This grant does not constitute a gratuity or donation of State credit, as under the terms of the Act itself this constitutes performance of public duties and with no right to reap individual profit.

In *Baker* v. *Hickman County*, 164 Tenn. 294, 47 S. W. 2d 1090, this Court sustained the validity of an Act of the Legislature which appropriated State funds to reimburse counties for funds used in building roads taken over by the State as a part of the State Highway System and said, 164 Tenn. at page 308, 47 S. W. 2d at page 1094: ''The construction of the state highway system at the joint expense of the state and the counties was not a lending of the state's credit to the counties, because the project was accomplished by direct action of the state,

for a state purpose, the completed system remaining under the control of the state for regulation and maintenance. Relief of the counties from their assumed share of the cost, by the appropriation of state revenue to reimburse the counties therefor, is not within the purpose or meaning of the constitutional restriction.''

In the instant case, the State Hospital Act calls for the construction of a system of hospitals under and in accordance with the State Plan, at the joint expense of the State, counties or cities, or nonprofit corporations, and the Federal Government, and the projects when completed will be under the control of the State for regulation and supervision, although the State will not be obligated to bear any part of the operating and maintenance cost of such projects. The project is accomplished through direct State act and under State control. It is for a State purpose and not to further the end of any private individual for gain or profit. The purpose of the Act is to provide the public of the entire State with better hospital facilities, which is not only a legitimate State purpose but in fact a State duty. The Act seeks to perform this function through the agencies of cities and counties and hospitals owned by general welfare corporations, under State supervision and control, rather than the much more expensive method of the State itself directly building and owning the hospitals required to serve the people.

In *Dodd et al. v. Roane County et al.*, 174 Tenn. 267, 124 S. W. 2d 953, this Court sustained a bond issue of Roane County, without a vote of the people, to build jointly with the City of Harriman, with the aid of Federal funds, a hospital to be owned by and located in the City of Harriman. This ruling was made although the only

voice which the County was to have in the operation of the hospital was the voluntary action of the City in electing the County Judge a member of the hospital board of directors.

And again, in *Stone et al.* v. *Town of Crossville et al.*, 187 Tenn. 19, 212 S. W. 2d 678, this Court held as valid bonds of Cumberland County to aid in building a hospital to be solely owned by the Town of Crossville.

It might be stated here that Article 2, Section 29, of the Constitution cannot always be relied upon as a guide in the interpretation of Article 2, Section 31, as these sections are different in purpose, in effect, and in wording.

In *Malone* v. *Peay*, 159 Tenn. 321, 17 S. W. 2d 901, this Court had before it the question of the constitutionality of an Act of the Legislature authorizing the purchase of land by the State to be conveyed by the State without compensation to the Federal Government for the purpose of maintaining a national park. It was contended that this Act was in violation of Article 2, Section 31, of the Constitution, as it amounted to a lending or giving of the credit of the State, but this Court ruled against this contention and sustained the validity of the Act. It was held that Article 2, Section 31, did not apply for two reasons:

1. Because the United States is not a corporation within the meaning of the provision of the Constitution.

2. Because the purpose of the constitutional provision was to prevent a loss to the State by reason of the loaning or giving of its credit, and no loss could result from the use proposed by the conveyance of the property to the Federal Government for park purposes.

This Court then said, 159 Tenn. at page 327, 17 S. W. 2d at page 903: ''Moreover, a transfer of the title to lands from the State to the United States for park purposes is not a divestiture of the *right of use*. The beneficial rights of the people of Tennessee are in no sense impaired. Under our dual form of government, the citizens of Tennessee are citizens of the United States. The passing of this property from one government to the other involves no loss to the citizen or taxpayer. The object of the constitutional inhibition invoked was to prevent a loss to the State by reason of the loaning or giving of its credit. Here not only can no loss result, but the State, considered as a political entity, is relieved of a continuing expense of upkeep, while the rights and privileges of this great park system will be preserved to the people of Tennessee.'' (Italics ours.)

In the instant case it is apparent that the State, by reason of the control set up over the complainants, will not suffer a loss by reason of its participation in the construction and expansion of hospitals. On the other hand, the State, considered as a political entity, is relieved of the vast expense which a program of State construction and operation would entail, and at the same time the rights and privileges of a statewide system of hospitals, maintained under the State Plan, will be made available and preserved for the benefit of the people of the State.

■ The language quoted above in *Malone* v. *Peay, supra,* demonstrates that the test under Article 2, Section 31, is not authorization or retention of title by the State, but rather the *right of use* by the State for its benefit.

It might be added here that constitutional provisions similar to those involved in the instant case have been

passed upon by the Courts of last resort in the states of Kentucky and Mississippi, and in many other states where they have similar constitutional provisions.

The Constitution of the State of Kentucky contains the following provision, Section 177: "The credit of the Commonwealth shall not be given, pledged or loaned to any individual, company, corporation or association, municipality, or political subdivision of the State; nor shall the Commonwealth become an owner or stockholder in, nor make donation to, any company, association or corporation; nor shall the Commonwealth construct a railroad or other highway."

The foregoing provision is similar to Article 2, Section 31, of our Constitution. The Kentucky provision above quoted was construed by the Court of Appeals in *Hager* v. *Kentucky Children's Home Society*, 119 Ky. 235, 83 S. W. 605, 67 L.R.A. 815, wherein it was held that an Act was valid under this constitutional provision, which appropriated $15,000 annually to the Kentucky Children's Home Society, a private corporation, organized under the laws of the State for purely charitable purposes. The Court found that the appropriation was for a public purpose and said: "These authorities clearly settle that the vital point in all such appropriations is whether the purpose is public; and that, if it is, it does not matter whether the agency through which it is dispensed is public or is not; that the appropriation is not made for the agency, but for the object which it serves; the test is in the end, not in the means. The limitation put upon the state government by the people is as to what things it may collect taxes from them for, to which it may apply their property through taxation; not upon the means by which or through which it will do it. It may well and

wisely be left to the Legislature to say how it will dispense the state's charities. Varying conditions, improved methods of treatment, changing circumstances affecting the ability of the people to provide for such charges, all bear upon the legislative discretion, and doubtless find a proper application in the measures finally adopted by that body. Yet back of all that must exist the power to do the thing in question—the power to make the provision. It is this power alone that the courts can deal with, and then only to the extent of determining whether it exists. Whether it is exercised, and how exercised, are manifestly matters of exclusive legislative discretion.'' 83 S. W. 608, 67 L. R. A. 818-819.

The Mississippi constitutional provision is as follows, Section 258: ''The credit of the state shall not be pledged or loaned in aid of any person, association, or corporation; and the state shall not become a stockholder in any corporation or association, nor assume, redeem, secure, or pay any indebtedness . . .''

In *Craig* v. *North Mississippi Community Hospital,* 206 Miss. 11, 39 So. 2d 523, which involved the constitutionality of a Mississippi statute similar to the Tennessee Hospital Act, wherein it was claimed that the Act offended the Mississippi Constitution prohibiting the loaning of the credit of the State to any person, association, or corporation, the Mississippi Supreme Court said, 39 So. 2d at page 529: ''A sufficient answer to this contention is that under said Chapters 430 and 79 of the Laws of 1948 the Legislature has not attempted to pledge or loan the credit of the state, but has simply appropriated funds already in the state treasury pursuant to the authority of Section 66 of the Mississippi Constitution of

1890 which provides 'No law granting a donation or gratuity in favor of any person or object shall be enacted except by the concurrence of two-thirds of the members elect of each branch of the legislature, nor by any vote for a sectarian purpose or use.' We do not base this decision solely upon the section just mentioned, nor do we hold that the Legislature has the unbridled authority to donate public money to private purposes even by a two-thirds vote of both houses, but we do hold that the legislature has the authority to appropriate public funds out of the state treasury for the care of the indigent sick in the nonprofit, nonsectarian hospitals of this state in accordance with the above quoted Section 86 of the Constitution, particularly where the expenditure of such funds for such purpose is under the supervision and control of a state agency. . . . 'If the end be public, it matters not that it is attained through a private channel.' Hare's American Constitutional Law, p. 286.''

 We conclude, therefore, that the State Hospital Act is valid and does not offend Article 2, Section 31, of our Constitution for the following reasons:

1. That the Act is for the accomplishment of not only a public but a State purpose as well.

2. That the hospitals become the agencies and instrumentalities of the State for the accomplishment of such State purposes under State control, regulation and supervision.

3. That the objection that the sovereign has no title to the institutions is met by the proposition that it will continue to have the use of the hospitals for the benefit of the people of the entire State.

For the reasons stated, we find no error in the decree of the Chancellor and it is affirmed.

NIEL, C. J., BURNETT and TOMLINSON, JJ., concur.

GAILOR, J., dissents.