ROBERTSON, Justice,
for the Court:
I.
This is another health services licensing dispute. At issue is whether the State Health Officer (SHO) acted arbitrarily and capriciously when he denied the applicant’s request for a Certificate of Need (CON) to offer cardiac catheterization services in Southwest Mississippi. The SHO denied the CON on grounds of an inadequate population base in the area the applicant serves. The Chancery Court held the SHO’s action impermissible and reversed.
For the reasons set forth below, we reverse and reinstate the SHO’s order denying the CON.
II.
•Southwest Mississippi Regional Medical Center (SWMRMC) is a 160-bed hospital and medical center situated in McComb, Mississippi, and is jointly owned by Pike County, the City of McComb, and Supervi *1239 sor Districts Four and Five of Amite County, Mississippi. SWMRMC has a medical staff of fifty-six physicians and provides more than 44,000 days of patient care on an annual basis. The Center is a major health resource for Pike County and the surrounding area. As a publicly-owned community hospital, SWMRMC is charged by law “to promote, develop and institute any [health care] services having an appropriate place in the operation of a hospital offering complete community health care.” Miss.Code Ann. § 41-13-35(5)(m) (Supp.1990).
On December 1, 1987, SWMRMC filed with the Mississippi State Department of Health an application for a CON to offer cardiac catheterization services at its facility in Pike County, Mississippi. As it was received by the Department prior to January 1, 1988, SWMRMC’s application was subject to review under the 1986 State Health Plan (“SHP”).
The Statewide Health Coordinating Council (SHCC) developed and promulgated the 1986 SHP. A lengthy public process preceded the SHP which, once finalized, served as the benchmark for all of the next succeeding year’s CON decisions. State law admonishes the State Health Officer, on pain of personal liability, that he approve only applications which substantially comply with the projection of need as reported in the State Health Plan in effect at the time the application is submitted. Miss.Code Ann. § 41-7-193(1) (Supp.1990); Grant Center Hospital of Mississippi, Inc. v. Health Group of Jackson, Mississippi, Inc., 528 So.2d 804, 808-10 (Miss.1988).
SWMRMC amended its application several times, and the Department began its review process in April of 1988. Shortly thereafter, Kings Daughters Hospital in Brookhaven, Mississippi, requested a hearing on the matter. All evidence was submitted by August 10, 1988, and the Hearing Officer’s report and recommendation was submitted to the SHO, Dr. Alton B. Cobb, on September 20, 1988. On September 29, 1988, the Department of Health, acting through Dr. Cobb, denied SWMRMC’s application on the grounds it did not meet the minimum population base criterion as set forth in the 1986 SHP.
SWMRMC. appealed to the Chancery Court of Pike County, Mississippi, which ■ reversed. In an opinion released November 7, 1989, the Chancery Court found:
... that the action of the Department in denying a Certificate of Need was unreasonable, unjustified, arbitrary and capricious, was an attempt to formulate rules and regulations without authority, and was not supported by substantial evidence.
The Chancery Court ordered the Department of Health and the SHO “to issue to Southwest Mississippi Regional Medical Center a Certificate of Need for the establishment of cardiac catheterization services.”
The Department now appeals to this Court.
III.
This is a proceeding for judicial review of administrative action, and it is important that we understand and accept what this fact implies. The Legislature has directed that an SHO’s CON order be subject to judicial review, but that it
... shall not be vacated or set aside, either in whole or in part, except for errors of law, unless the Court finds that the order ... is not supported by substantial evidence, is contrary to the manifest weight of the evidence, is in excess of the statutory authority or jurisdiction of the ... Department ..., or violates any vested constitutional rights of any part involved in the appeal.
Miss.Code Ann. § 41-7-201(4) (Supp.1990). This is nothing more than a statutory restatement of familiar limitations upon the scope of judicial review of administrative agency decisions. Magnolia Hospital v. Mississippi State Department of Health, 559 So.2d 1042, 1044 (Miss.1990); Melody Manor Convalescent Center v. Mississippi State Department of Health, 546 So.2d 972, 974 (Miss.1989); Grant Center Hospital of Mississippi, Inc. v. Health Group of Jackson, Mississippi, Inc., 528 So.2d at 808 (courts may alter the administrator’s action *1240 only if convinced it is arbitrary, capricious or unreasonable, or is not supported by substantial evidence).
The terms “arbitrary” and “capricious” are open-textured and not susceptible of precise definition or mechanical application. We find helpful meanings North Carolina has assigned in a not-dissimilar context:
“Arbitrary” means fixed or done capriciously or at pleasure. An act is arbitrary when it is done without adequately determining principle; not done according to reason or judgment, but depending upon the will alone, — absolute in power, tyrannical, despotic, non-rational,- — implying either a lack of understanding of or a disregard for the fundamental nature of things.
“Capricious” means freakish, fickle, or arbitrary. An act is capricious when it is done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles_
In Re Housing Authority of City of Salisbury, 235 N.C. 463, 468, 70 S.E.2d 500, 503 (1982).
The Chancery Court was constrained by these familiar principles. On further appeal, we perform our function under a like regimen. Put otherwise, we review de novo the action of the Chancery Court.
IV.
We need be clear of an issue that is not before us. The wisdom vel non of the CON program is a legislative matter. We are not moved by its federal sacking, see Grant Center, 528 So.2d at 806-07, nor by the powerful policy arguments that may be leveled against it, made in the name of deregulation of enterprise. The program is a constitutionally permissible stratagem for addressing the health care needs of the people. See, e.g., McCaffrey’s Food Market, Inc. v. Mississippi Milk Commission, 227 So.2d 459, 461-62 (Miss.1969); Craig v. North Mississippi Community Hospital, 206 Miss. 11, 39-41, 39 So.2d 523, 528-29 (1949). It was on our statute books at all times relevant and remains so. We have faithfully enforced it in the past. See Magnolia Hospital v. Mississippi State Department of Health, supra; Melody Manor Convalescent Center v. Mississippi State Department of Health, supra; Grant Center Hospital of Mississippi, Inc. v. Health Group of Jackson, Mississippi, Inc., supra. We will continue to do so until the Legislature directs otherwise.
Beyond doubt, the Department has the authority to establish criteria for granting CONs. In pertinent part, Miss.Code Ann. § 41-7-187 (Supp.1990) provides:
The State Department of Health is hereby authorized to develop and implement a statewide health certificate of need program. The State Department of Health is authorized and empowered to adopt by rule and regulation ... criteria, standards and plans to be used in evaluating applications for certificates of need....
Implementation of criteria is also largely left to the Department. Miss.Code Ann. § 41-7-189(2) (Supp.1990) states:
Selected statistical data and information obtained by the State Department of Health as the licensing agency for health care facilities requiring licensure by the state and as the agency which provides certification for the Medicaid and/or Medicare, program, may be utilized by the department in performing the statutory duties imposed upon it by ar\y law over which it has authority, and regulations necessarily promulgated for such facilities to participate in the Medicaid and/or Medicare program....
Read together, these statutes authorize the Department both to establish criteria for Certificates of Need'and objectively review information tendered in applications. The' Department’s power is limited only in that its actions may not be arbitrary and capricious. Melody Manor Convalescent Center v. Mississippi State Department of Health, 546 So.2d at 974; Mississippi State Tax Commission v. Dyer Inv. Co., Inc., 507 So.2d 1287, 1289 (Miss.1987); State Board of Psychological Examiners v. Coxe, 355 So.2d 669, 671 (Miss.1978).
V.
All agree that at the time of SWMRMC’s application, the State Health Plan required, inter alia, a showing of:
*1241 4. A population base of approximately 200,000 to 300,000 shall be required before such services may be approved and the facility proposing the service must prove that they have the referral network to ensure the caseload required (may be interstate).
We considered and upheld this standard in Magnolia Hospital, 559 So.2d at 1045. The State Health Officer employed it to deny SWMRMC’s application.
Context is important. Our state’s health regulators have been empowered to deny Certificates of Need absent evidence the services the applicant proposes are needed and will be provided with high quality control and on a cost-effective basis. The regulators are charged to ensure that there are enough potential patients to sustain the service “over the long haul, ... that staff skills remain sharp, and the like.” Brief of Appellant, p. 18. In any new program, such as that SWMRMC proposes, the level of likely utilization is a matter of prime concern. It is also necessarily subject to great uncertainties. To reduce the risk that an underutilized service will be established, the SHCC wrote into the SHP two independent criteria; first, that the applicant “project a caseload of at least 450 catheterization cases per year” and, second, the 200,000 to 300,000 minimum population base. No one questions that SWMRMC has met the first. It is on the second that SWMRMC’s application flunked.
Attempting to meet the SHP minimum population base standards, SWMRMC claims eleven counties in Mississippi and three parishes in Louisiana.[1] The Department, however, examined SWMRMC’s patient origin records for prior years and found that only six counties constituted SWMRMC’s primary and secondary service areas, a population far short of the necessary 200,0Ó0.[2] The Department concluded:
This project is not in substantial compliance with the criteria and standards contained in the 1986 State Health Plan and Section L of the Certificate of Need Review Manual. Specifically, the application does not meet the criteria of minimum population base. The applicant has proposed a projected service population of 250,650 by the year 1990. Staff analysis of patient-origin data projects a maximum population base of 164,299 by the year 1990.
With SWMRMC’s patient origin experience with the three Louisiana parishes unverified, we find it likely that the 164,299 figure is quite generous in applicant’s favor. In any event, it is well below 200,000. The minimum population base serving as an independent criteria, the SHO’s Order denying SWMRMC’s CON application would seem correct.
At SWMRMC’s urging, the Chancery Court put the SHP and the Department’s response to it under the microscope. The Department chooses to measure the population criteria using patient origin reports. Through this method, the Department reviews each hospital measured by a two-week sample period in October of each year. We are also told this method is accompanied by procedural safeguards and *1242 uniformity. However, the Chancery Court found the Department’s method of population calculation must give way to use of an actual study of patient origins for a period of a year. In effect, that Court substituted its method of measuring the population criteria with that of the Department’s. While the Department’s method of population analysis may be imperfect, it hardly approaches an arbitrary or capricious action. The Chancery Court erred in substituting its judgment for the Department’s.
Before this Court, SWMRMC struggles mightily to prove that its cardiac catheteri-zation service will enjoy adequate use, that it will prove cost-effective and achieve high quality control. The essence of the point is that the SHCC, in developing the 1986 SHP, could — and should — have better stated the criteria for a cardiac catheterization CON. And perhaps this is so, but that is beside the point. SHCC, in fact, sought to minimize the risk of under-utilization with two independent criteria, one of which is the 200,000 to 300,000 minimum population base. We upheld this CON criteria in Magnolia Hospital. SWMRMC has not convinced us we were wrong in so doing, nor that the criteria is so arbitrary and capricious that we should ignore it.'
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
PRATHER, J., not participating.

. SWMRMC submitted the following counties in their application: Pike, Amite, Franklin, Lincoln, Lawrence, Wilkinson, Walthall, Adams, Jefferson, Marion, and Copiah. Tangipahoa, Washington and St. Helena Parishes of Louisiana were also included, making the projected population total 250,650 for 1990.

. The Department accepted Pike, Amite, Franklin, Walthall, Lincoln and Lawrence Counties. The total population for these six counties constituted 125,653. When the Department added the three Louisiana parishes, the projected population grew to 164,299; still far short of the necessary 200,000. The Department expressed doubt concerning whether the Louisiana parishes were truly a part of Southwest’s population base. The parishes amounted to 15.4 percent of the population base claimed by Southwest. However, patient origin reports indicated only 3.2 percent of Southwest’s patients came from Louisiana. Southwest responded to the Department’s figures by adding an additional 38,207 people who would be served through Southwest/St. Dominics-Jackson, making the population base 202,506. However, the SHP did not allow this method of calculation, causing the Department to refuse the extra 38,207. The Department concluded a figure less than 164,-299 was more realistic.