Dear Col. Brown:
This responds to your letter of August 18, 1999, regarding the use of State funds from the Office of Emergency Preparedness as a match with federal funds to assist the Louisiana Emergency Preparedness Association in the publication of a joint newsletter dealing with emergency preparedness matters, as outlined in your letter.
The Attorney General has opined that in order to lawfully spend public funds, a political subdivision must have a statutory duty or obligation to expend the funds, or transfer public things of value, for a statutorily prescribed purpose that is constitutionally authorized, and by a means that is also authorized by law, even if discretionary. Atty. Gen. Op. No. 90-651. The test for compliance with Art. VII, § 14(A) is threefold: Is the alienation of public property or funds (1) for a public purpose and (2) for a public benefit and (3) is the value of the public property or funds alienated proportionate to the value of the public benefit. Atty. Gen. Op. No. 89-106. The determination of a prima facie legal obligation or duty is the first step of the analysis. The second is to determine the substantive legal viability of the legal obligation or duty facially present. Atty. Gen. Op. No. 90-651.
Opinions of this Office have held that "where a public service is provided and a public purpose is served by state officials and agencies subscribing to membership and association of public officials, payment of dues and conference fees by the public agency to such associations is a permissible use of public funds" Atty. Gen. Op. No. 75-124. Such dues are not considered donations and are not prohibited by Art. VII, § 14(A) of the Louisiana Constitution.
For many years, officials and agencies of Louisiana's state and local government have had memberships in national, regional, and state associations, and the dues to these associations and the expenses connected with participation in the work of these associations have been paid from appropriated public funds. Atty. Gen. Op. No. 75-124.
Governors' conferences, legislators' conferences and judicial conferences are held annually at which officials meet and exchange ideas and information relative to the operation of their offices, many of which publish newsletters, flyers and similar publications. The National Association of Attorneys General, the National Emergency Management Association, and the Louisiana Emergency Preparedness Association "are associations created to serve the public purpose of facilitating the exchange of ideas, programs and solution of public problems common to public officials holding the same office in different states". Atty. Gen. Op. No. 75-124.
La. R.S. 29:726 (E)(12) and (13), grants the Office of Emergency Preparedness authority to "cooperate with the federal government and any public or private agency or entity in achieving any purpose of this Chapter and in implementing programs for disaster emergency mitigation, preparation, response, and recovery . . . Do other things necessary, incidental, or appropriate for the implementation of this Chapter". By participating in these organizations, state officials are given the opportunity to exchange ideas of the best way to promote effective emergency procedures; to keep current on emergency relief developments; and to accumulative information with regard to needed emergency action plans.
In addition to holding meetings, associations of these officials provide newsletters and other publications which aid their members in conducting the affairs of their public agencies. Atty. Gen. Op. No. 75-124. According to Atty. Gen. Op. No. 90-126A, public funds generally may be used for public information functions to provide citizenry with factual information about government programs. However, use of public funds to manipulate public opinion is ultra vires and unconstitutional. In addition, Atty. Gen. Op. No. 98-49 concluded that a police jury was not prohibited from using public funds to disseminate purely factual, unbiased information about governmental projects and programs in an annual newsletter to the citizens of the Parish.
Courts in other jurisdictions have appropriately defined `public purpose' as follows:
 What is a `public purpose' that will justify the expenditure of public money is not capable of precise definition, but the courts generally construe it to mean such an activity as will serve as a benefit to the community as a body and which, at the same time, is directly related to full functions of government. The mere fact that some private interest may derive an incidental benefit from the activity does not deprive the activity of its public nature if its primary purpose is public. Pack v. Southern Bell Tel. Tel. Co., 215 Tenn. 503, 387 S.W.2d 789 (1965), citing Minneapolis Gas Co. v. Zimmerman, 253 Minn. 164, 91 N.W.2d 642.
Likewise, Black's Law Dictionary defines `public purpose' as an activity that has for its objective the promotion of the public health, safety, morals, general welfare, security, prosperity, and contentment of all the inhabitants or residents within a given political subdivision.
There was also an earlier approval of the same general element in the definition of a public purpose in Bedford CountyHospital v. Browning, 189 Tenn. 227, 225 S.W.2d 41 (1949), wherein this court said (citing with approval a Kentucky case): These authorities clearly settle that the vital point in all such appropriations is whether the purpose is public; and that, if it is, it does not matter whether the agency through which it is dispensed is public or is not; that the appropriation is not made for the agency, but for the object which its serves; the test is the end, not the means. Thus, the true test of public purpose in regard to the expenditure of public funds is in the end or total result. Pack v. Southern Bell Tel. Tel Co., 215 Tenn. 503,387 S.W.2d 789 (1965).
Therefore, as long as a public purpose is being provided, the use of the public funds for the payment of dues and for professional publications is permissible.
Based upon this analysis, we find that the proposed use of public funds by the Office of Emergency Preparedness is appropriate and consistent with Article VII, § 14 of the Louisiana Constitution, particularly since subsection C specifically provides that "for a public purpose, the State and its political subdivisions" may engage in cooperative endeavors in the public interest."
We hope this information is of assistance to you and if we may be of further help, please advise.
Very truly yours,
 GARY L. KEYSER CHIEF, LANDS NATURAL RESOURCES SECTION
GLK/tp