DICKINSON, Presiding Justice,
dissenting:
¶ 47. Before 2008, public power utilities were allowed to raise their customers’ rates to pay for the construction of new power-generation plants after the plants began to generate electricity. The Mississippi Baseload Act now allows the Public Service Commission to approve rate increases while construction of the plants is in progress (CWIP), before they begin to generate electricity.[25]
¶ 48. In order to construct a new power generation plant in Kemper County, Mississippi Power Company sought and obtained the Commission’s approval to raise its rates during construction. The case before us involves one Mississippi Power customer — Thomas Blanton — who makes four claims related to that rate increase.
¶ 49. First, he argues that raising his rates during construction of the Kemper plant, before it begins to deliver electricity, amounts to an unconstitutional and illegal tax. Second, he claims CWIP assessments under the Mississippi Baseload Act violate due process because, through the rate increases, Mississippi Power is taking his property without affording him notice and an opportunity to be heard. Third, he claims that the rate increase violates Article 14, Section 258 of the Mississippi Constitution, which prohibits pledging the credit of the State of Mississippi “in aid of any person, association, or corporation .... ” And fourth, he claims that a settlement agreement reached between Mississippi Power and the Commission should be set aside because he was not allowed to participate in it; because Mississippi Power had ex parte communications with the Commission in violation of Section 77-2-13; and because the only notice he received of the agreement was posted on the Commission’s website.
¶ 50. The majority opinion rests on two conclusions. First, the majority believes every ratepayer is entitled to individual notice of every rate proceeding before the PSC. While this may or may not be true, Blanton is the only aggrieved party in this appeal, and he actively participated in this rate proceeding since the beginning and at every stage.
¶ 51. Second, the majority concludes that Mississippi Code Section 77-3-105 requires prudency findings before a rate increase ■ based on CWIP recovery. But Blanton argued that Mississippi Power Company’s proposed rate schedule should have been dismissed for the four reasons stated above, and he moved to dismiss the proposed rate schedule for those four reasons alone. He made no other challenge to the Commission’s decision to grant CWIP recovery. So I will address the questions he actually raised below.
ANALYSIS
¶ 52. This Court will not reverse administrative agencies’ decisions unless we find *925 them to be arbitrary, capricious, unsupported by substantial evidence, outside the scope of the agency’s authority, or illegal or unconstitutional.[26] Appellants who raise constitutional challenges are “burdened with carrying [their cases] beyond a reasonable doubt before this Court has authority to hold the statute, in whole or in part, of no force or effect.”[27]
¶ 53. When, as here, we are required to review the Legislature’s authority to enact a particular law, we must remain cognizant of the grant of legislative power in our Mississippi Constitution. Unlike the United States Congress, which possesses only those powers specifically enumerated and delegated to it by the United States Constitution,[28] our state Legislature possesses plenary power to enact any law that is not prohibited by the Mississippi Constitution or in violation of an individual right guaranteed by the Mississippi or United States Constitutions.[29]
¶ 54. So, to prevail in this case, Blan-ton’s hill is steep. He must cite some specific constitutional provision precluding the Legislature’s decision to allow utilities to collect their financing costs of construction prior to the project’s completion. Much of the parties’ dispute stems from a disagreement as to whether these financing costs should be considered a tax or a utility rate. But, because Blanton has faded to meet his burden to show that the Base Load Act violates the Constitution— regardless of whether the CWIP allowance constitutes. a tax or a rate — -I will not address that question.
I. CWIP allowance is not an unconstitutional or illegal tax.
¶ 55. First, Blanton argues that, when the Commission exercised its authority under the Mississippi Base Load Act to include CWIP recovery in utility rates, it imposed an unconstitutional and illegal tax on rate payers. Blanton cites three constitutional provisions and one statute in support of that argument. He first cites Section 112 of the Mississippi Constitution, which states that “[t]axation shall be uniform and equal throughout the State.”[30] But, because we clearly have held that Section 112 applies only to property taxes,[31] I must reject this argument without further analysis.
¶ 56. Next, Blanton cites Section 80, which states:
Provisions shall be made by general laws to prevent the abuse by cities, towns, and other municipal corporations of their powers of assessment, taxation, borrowing money, and contracting debts.[32]
¶ 57. Blanton does not argue — and he cites no authority to support the proposition — that either the Commission or Mississippi Power falls within the definition of “cities, towns, and other municipal eorpo- *926 rations.” So Section 80 also is equally inapplicable.
¶ 58. Third, Blanton cites Article 6, Section 172A, which states:
Neither the Supreme Court nor any inferior court of this State shall have the power to instruct or order the State or any political subdivision thereof, or an official of the State or a political subdivision, to levy or increase taxes.[33]
¶ 59. Blanton provides little explanation as to how this provision applies. It was the Legislature — not this Court — that authorized the Commission to approve the CWIP allowance. Section 172A prevents a court from ordering a political subdivision to levy a tax, and no court has levied any tax in this case. Accordingly, this argument is without merit.
¶ 60. Finally, Blanton argues that CWIP constitutes an illegal tax because it violates Section 7-9-19,[34] which requires that “[a]ll taxes, fees and penalties that may be hereafter collected for or in the name of the State of Mississippi shall be paid direct to the Treasurer of the state....”[35] And because customers pay CWIP directly to Mississippi Power, rather than to the Treasurer, Blanton argues that the CWIP collection process is illegal.
¶ 61. Even assuming arguendo that CWIP is a tax, this merely would present conflicting statutes. Both the Baseload Act and CWIP recovery conflict with Section 7-9-19. But this Court has held that:
in resolving the conflict of specific versus general statutory provisions: “To the extent that two constitutional or statutory provisions overlap or conflict, specific provisions control over general provisions.”[36]
And because the Baseload Act — which specifically provides the Commission authority to authorize Mississippi Power to collect CWIP — is more specific than Section 7-9-19’s general taxing provision, the Baseload Act would govern.
¶ 62. Neither the constitutional provisions nor the statute cited by Blanton prevents the Legislature from exercising its plenary power and authority to authorize CWIP recovery, even were we to assume CWIP imposes a tax. Accordingly, Blan-ton has failed to carry his burden to show beyond a reasonable doubt that some constitutional provision would preclude CWIP recovery even if CWIP recovery imposes a tax.
II. CWIP assessments under the Mississippi Baseload Act do not violate Blanton’s due-process rights.
¶ 63. Next, Blanton argues that, because CWIP imposes a tax, these assessments deprive him of money without any guaranteed connection to a public benefit and violate his substantive due-process rights. In his original cross-appeal, Blan-ton also argued that, because the Commission conducted proceedings without individual notice to ratepayers, it violated his procedural, due-process rights.
¶ 64. Mississippi Power and the Commission argue that Blanton lacks a protected property interest in any certain utility rate and cite our opinion in Mississippi Power Company v. Goudy, in which a utility ratepayer claimed that Section 77- *927 3-33 violated due process because it allowed utility companies to change rates subject to refund under bond, pending a determination by an administrative entity or court, with no procedural rights for ratepayers.[37] We upheld the statute because a ratepayer has no property interest that would implicate due-process protections in reasonable utility rates.[38] Accordingly, if CWIP constitutes a utility rate as the Commission argues, Blanton lacks a property interest subject to due-process protections.
¶ 65. But Blanton attempts to distinguish Goudy by arguing that CWIP assessments impose a tax and therefore constitute takings by the government. This taking through a tax, he argues, violates his protected property interest in money.[39] Were I to agree with Blanton that CWIP imposes a tax, still, he would be unable to succeed on his due-process claim. This Court rejected a similar due-process attack in Albritton v. City of Winona,[40] in which the statute that created the Mississippi Industrial Commission allowed it to authorize the use of municipal taxes to purchase land and facilities that then would be leased to individuals or corporations for industrial use.[41] There, we found that the only limit on the State’s authority in this respect is that the policy must not be arbitrary,[42] and that using a tax to acquire property to be leased to industry was not arbitrary because it reasonably related to the purposes of promoting the development of industry and reducing unemployment.[43]
¶ 66. Here, Blanton correctly argues that the Kemper Plant lacks guaranteed success. Mississippi Power admitted as much at oral argument. And it is quite possible that, even if the plant is successful, it may not result in lower utility rates for Blanton. But the Legislature’s stated purposes for the Baseload Act do not include lowering a customer’s future utility rates. Section 77-3-101 sets out the State’s need to promote the expansion of electrical power generation, and that availability of electricity is vital to economic growth. It also states that new power-generating technologies are an important part of needed growth, that additional investment in power infrastructure is necessary to take advantage of certain financial incentives, and that energy independence for the State is an important goal.[44]
¶ 67. In Albritton, we held that the State may invest tax money in the development of industry.[45] So, even if CWIP imposes a tax, I cannot say that the investment of tax revenues in the construction of a power plant that proposes to use new *928 technology for generating electricity for future generations is unrelated to the Legislature’s stated public-policy purposes for allowing the Commission to approve CWIP.[46] Accordingly, I cannot find that the Baseload Act is arbitrary if, as Blanton argues, it is a tax.
¶ 68. Therefore, Blanton’s substantive due-process claims fail regardless of whether I consider CWIP a tax or a utility rate.
¶ 69. As to Blanton’s procedural due-process challenge, he cites Londoner v. City and County of Denver to support his argument that CWIP denies Mississippi Power customers’ right to procedural due process. In Londoner, the city council of Denver, Colorado, delegated to an equalization board the job of setting a tax on property owners to be used in paving a roadway abutting their property.[47] The United States Supreme Court-noting that the property owners were given neither notice nor an opportunity to be present at a hearing on the issue,[48] and that Colorado law provided landowners no right to challenge the taxes in court[49] — held that due process required either personal notice or notice by publication and a hearing.[50]
¶ 70. Londoner has no application here. Both Mississippi Power and the Commission point out that Blanton has participated actively in this litigation at every stage. And he has forcefully challenged both the constitutionality of CWIP and the public-policy use of the proceeds. He does not allege that, because of a lack of notice or hearing, he has beeh deprived of making any argument or any challenge to CWIP. Further, the dictates of Londoner have been satisfied, because notice of the rate proceedings was provided-by publication.
III. CWIP assessments under the Mississippi Baseload Act do not unconstitutionally pledge the credit of the State of Mississippi in aid of a corporation.
¶ 71. Blanton next directs us to Section 258 of the Mississippi Constitution, which prohibits the State from pledging its credit in aid of a corporation.[51] He suggests that when the state imposed CWIP on ratepayers to support the Kemper construction project, it somehow pledged the state’s credit to protect Mississippi Power’s credit rating.
¶ 72. Section 258 states:
The credit of the state shall not be pledged or loaned in aid of any person, association, or corporation; and the state shall not become a stockholder in any corporation or association, nor assume, redeem, secure, or pay any indebtedness or pretended indebtedness alleged to be due by the state of Mississippi to any person, association, or corporation whatsoever, claiming the same as., owners, holders, or assignees of any bond or bonds, now generally known as “Union Bank” bonds and “Planters Bank” bonds.[52]
¶ 73. Once again, assuming arguendo that CWIP recovery is a tax, we must look to our opinion in Albritton, in which we held that the use of municipal taxes to purchase land and facilities to be leased to *929 corporations for industrial use did not violate Section 258, because the expenditure of public revenue served the legitimate public purpose of economic development.[53]
¶ 74. Likewise, in Craig v. North Mississippi Community Hospital, we found that Section 258 did not preclude the State from spending public funds to support a private, nonprofit hospital because of the State’s interest in providing healthcare to indigent patients.[54] And in Chance v. Mississippi State Textbook Rating and Purchasing Board, we held that, consistent with Section 258, the State could provide free textbooks to private schools.[55]
¶75. As discussed above, CWIP supports legitimate governmental interests, including the development and use of new technologies to expand energy production within the State. Accordingly, even if I accepted Blanton’s argument that CWIP recovery is a tax, his argument still fails. Further, Blanton cites no case in which this Court has struck down a similar provision under Section 258. Accordingly, I would hold that the State’s imposition of CWIP does not violate Article 14, Section 258 of the Mississippi Constitution.
IV. Any ex parte contact between the Commission and Mississippi Power during settlement negotiations does not invalidate the Settlement Agreement or the Commission’s subsequent approval of CWIP recovery.
¶ 76. Blanton claims that the settlement negotiations between the Commission and Mississippi Power violated Mississippi Code Section 77-2-13’s prohibition of ex parte contact in contested Commission proceedings. Accordingly, he argues that the contact renders the settlement agreement and second rate proceeding invalid. Blanton requests that this Court vacate the settlement agreement, the second rate proceeding, and the resulting CWIP approval. I disagree.
¶ 77. Section 77-2-13 states:
A public service commissioner, commission or public utilities staff employee, or consultant assisting the commission in 'investigating, compiling, evaluating and analyzing the record shall not communicate, directly or indirectly, regarding any issue in a contested proceeding other than communications necessary to procedural aspects of maintaining an orderly process, with any commission employee or consultant who has participated in the proceeding in a public advocacy or prosecutorial capacity, any party, his agent or other person acting on his behalf who has a direct or indirect pecuniary interest in the outcome of the proceeding, without notice and opportunity for all parties to participate.[56]
¶ 78. Blanton claims that the entire Commission violated this provision when it engaged in settlement negotiations without allowing him to participate. These negotiations occurred during Mississippi Power’s appeal of the Commission’s denial of its proposed rate increase.
¶ 79. The Commission and Mississippi Power argue that they did not violate Section 77-2-13 because the communications occurred during an appeal of the Commission’s final order. Accordingly, they suggest that the communications were not *930 “regarding any issue in a contested 'proceeding ” before the Commission.[57] Blan-ton argues that the Commission should not now be heard to argue that its order was final, when previously it argued the opposite to this Court, claiming that because its order was not final, Mississippi Power had no right to appeal.
¶ 80. While I find it interesting that the Commission would now choose to defend against this claim by asserting that its original order denying Mississippi Power’s proposed rate increase was indeed final, when it vigorously argued the opposite in the original appeal, I conclude that Blan-ton’s argument fails for a different reason.
¶ 81. Section 77-2-13 provides that relief for a violation of the statute shall be granted when “necessary to ensure that such violation does not prejudice any party or adversely affect the fairness of the proceedings.” [58] Blanton does not claim or show that the settlement negotiations caused him prejudice or rendered these proceedings unfair. Despite the fact that the settlement resulted in a dismissal.of Mississippi Power’s original appeal, we allowed him to continue with his cross-appeal. The ex parte communications and settlement agreement have in no way prejudiced Blanton’s opportunity or ability to litigate his claims.
¶ 82. Because I find that all of Blan-ton’s contentions from the rate proceedings below lack merit, I would affirm the Commission’s decision.
WALLER, C.J., CHANDLER AND COLEMAN, JJ., JOIN THIS OPINION.

. Miss.Code Ann. §§ 77-3-101 to 77-3-109 (Rev.2009).

. BellSouth Telecomm., Inc. v. Mississippi Pub. Serv. Comm’n, 18 So.3d 199, 201 (Miss.2009) (citing Town of Enterprise v. Mississippi Pub. Serv. Comm’n, 782 So.2d 733, 735 (Miss.2001)).

. State v. Mississippi Ass'n of Supervisors, Inc., 699 So.2d 1221, 1223 (Miss.1997).

. United States v. Morrison, 529 U.S. 598, 607, 120 S.Ct. 1740, 1748, 146 L.Ed.2d 658 (2000).

. Moore v. Grillis, 205 Miss. 865, 888, 889, 39 So.2d 505 (1949) (citing Farrar v. State, 191 Miss. 1, 2 So.2d 146 (1941)).

. Miss. Const. art. 4, § 112.

. Southern Package Corp. v. State Tax Comm’n, 174 Miss. 212, 164 So. 45, 46 (1935).

.Miss. Const. art. 4, § 80.

. Miss. Const. art. 4, § 172A.

. Miss.Code Ann. § 7-9-19 (Rev.2014).

. Id.

. Harrison v. State, 800 So.2d 1134, 1137 (Miss.2001) (quoting Yarbrough v. Camphor, 645 So.2d 867, 872 (Miss.1994); McCrory v. State, 210 So.2d 877, 877-79 (Miss.1968); Lenoir v. Madison, 641 So.2d 1124, 1128 (Miss.1994)).

. Mississippi Power Co. v. Goudy, 459 So.2d 257, 259 (Miss.1984).

. Id. at 263.

. Blanton also points us to State ex rel. Pittman v. Mississippi Public Service Commission, in which we held that the Commission could not approve — and the power company could not recover — utility rates for profits lost during a hurricane, because it would compensate the power company for services never provided to the ratepayer. State ex rel. Pittman v. Pub. Serv. Comm'n, 520 So.2d 1355, 1363 (Miss.1987). However, our holding in that case was based on the Commission's statutory authority and was completely unrelated to due process. Blanton, however, challenges a Commission decision specifically authorized by statute.

. Albritton v. City of Winona, 181 Miss. 75, 178 So. 799 (Miss.1938).

. Id. at 801.

. Id. at 805.

. Id. at 805.

. Miss.Code Ann. § 77-3-101 (Rev.2009).

. Albritton, 178 So. at 805.

. Miss.Code Ann. § 77-3-101(a) (Rev.2009).

. Londoner v. City and County of Denver, 210 U.S. 373, 385, 28 S.Ct. 708, 52 L.Ed. 1103 (1908).

. Id.

. Id.

. Id. at 385, 28 S.Ct. 708.

. Miss Const. art. 15, § 258.

. Miss Const. art. 15, § 258.

. Albritton, 178 So. at 809, 810.

. Craig v. North Miss. Cmty. Hosp., 206 Miss. 11, 39 So.2d 523, 529 (Miss.1949).

. Chance v. Miss. State Textbook Rating and Purchasing Bd., 190 Miss. 453, 200 So. 706, 711 (1941).

. Miss.Code Ann. § 77-2-13(1) (Rev.2009).

. Id.

. Miss.Code Ann. § 77-2-13(4) (Rev.2009).